**NEWBERRY v. JOHNSON.    (No. 10073.)**

(Court of Civil Appeals of Texas. Fort Worth. April 25, 1925. Rehearing Denied May 23, 1925.)

**1. Appeal and error ⬤1062(1)—Error, if any, in submission of issue, not prejudicial as to appellant, in whose favor jury found on such issue.**

Jury having found in appellant's favor on issue of fraud, error, if any, in submission of such issue, was not prejudicial.

**2. Infants ⬤102—Definition of word necessary held not erroneous as disregarding minor's ability to pay, or question of purchase for speculative purpose.**

As regards married minor's contention that home purchased by him was not a necessary, instruction, defining term necessary, *held* not erroneous as excluding idea that minor might rent or lease such home, and as disregarding question whether he was able to pay therefor, or bought it for speculative purpose, where submission of issue as to his inability to pay, or purchase for speculative purpose, were not requested.

**3. Trial ⬤351(2) — The failure to request submission of issues constitutes a waiver thereof.**

Failure to request submission of issues constitutes a waiver thereof.

**4. Infants ⬤98—Evidence of market value of home sold to minor held properly admitted.**

Since married minor, who purchased home constituting a necessary, is liable only for its reasonable cost and market value, evidence on question of market value and initial cost of home *held* properly admitted.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by C. L. Johnson against J. L. Newberry. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 248 S. W. 456; 267 S. W. 476.

Ben L. Cox and Thos. E. Hayden, Jr., both of Abilene, for appellant.

D. M. Oldham and C. G. Whitten, both of Abilene, for appellee.

CONNER, C. J. A detailed statement of this case may be found in the opinion of this court in the case of Newberry v. Johnson, rendered on December 9, 1922, and reported in 248 S. W. 456. By reference to that opinion, it will be seen that the appellee, Johnson, sued the appellant, Newberry, to recover upon certain promissory notes given by Newberry as part payment of the purchase price for certain premises situated in the city of Abilene, Tex. Newberry defended upon the ground that at the time of the purchase he was a minor. This defense was answered by the plaintiff to the effect that the premises had been purchased by Newberry as a homestead for himself and wife and constituted a necessary, and hence that Newberry was bound upon the notes. This Newberry denied generally and specially and contended that as a matter of law a home, under the circumstances as alleged by plaintiff, did not constitute a necessary. The trial court gave a definition of "necessaries," and the case was submitted to the jury upon this issue, and upon the further issue of whether Newberry had been guilty of fraud in concealing his age, as had been alleged by the plaintiff in his answer to Newberry's plea of minority. The jury found that Newberry was under the age of 21 years at the time he purchased the property in controversy, but that he had not been guilty of fraud in concealing his age at the time.

The jury further found that the property in controversy was a "necessary" as had been defined in the charge of the court. Upon such findings the court entered judgment for the plaintiff, Johnson, decreeing a recovery upon the notes declared upon in accordance with their terms with a foreclosure of the vendor's lien to secure payment, from which judgment the defendant duly appealed.

By his pleadings and presentation in this court on that appeal, appellant's principal contention was that the purchase of a house and lot as a home did not, as a matter of law, constitute necessaries for which Newberry was bound. With this contention, as will be seen by reference to our said opinion reported in 248 S. W. 456, we agreed, and consequently reversed the judgment in appellant's favor for the recovery of $2,500 in cash, which appellant had paid at the time of his purchase, less the reasonable value of the premises during its occupancy by Newberry, with the return of the premises to Johnson.

From such judgment by this court Johnson sued out a writ of error to our Supreme Court. The writ was granted and the case referred to section B of our Commission of Appeals, 267 S. W. 476, which, after an exhaustive review of authorities, disagreed with this court, and held that, as a matter of law, the contract of a minor for necessaries was neither void nor voidable, and that a homestead for a married minor constitutes necessaries, and our judgment was accordingly reversed, and the case remanded to this court for a determination of assignments and issues that had been pretermitted by us in our opinion on the theory that Newberry, as a matter of law, is entitled to disaffirm his contract, and could in no event be required to pay more than the reasonable rental value of the property while in his possession and control.

We accordingly now resume consideration of the case upon the theory of the law as enunciated in the able opinion of Presiding Justice Powell of section B of the Commission of Appeals, reported in 267 S. W. 476, as already stated.

[1] Appellant, Newberry, assigns error to the submission of the issue of fraud to the jury, but, inasmuch as the jury found in his favor on this issue, we cannot think prejudicial error was committed in this respect, and we, hence, will not review the pleadings and evidence relating to the subject.

Aside from assignments raising the question determined by the Commission of Appeals, appellant's principal contention is directed to criticisms of the court's definition of the term "necessaries." We will here quote the definition of the court as given in the court's charge to the jury:

"By the term 'necessaries' is not confined to merely such things as are required for a bare existence, but include those things without which the individual cannot comfortably live, and which are useful, and suitable, and necessary, and proper, for his support, use, and comfort in life, taking into consideration the minor's status and condition in life. And, where the infant is a married man, he is permitted to furnish his wife with necessaries, and you will take into consideration those things which are necessary for husband and wife as well as for the husband alone, and by the term 'necessaries' as applied to the husband is meant such things as the husband should supply to his family, and which are suited to their condition and station in life, their needs and wants, in so far as his ability will permit."

Appellant's objections to this charge, which were seasonably urged, are thus presented in his brief:

"Defendant's objections to said charge are: (a) That it is on the weight of the evidence, in that it is calculated to unduly influence the jury to conclude that the premises constitute a necessary because 'useful' and 'suitable' for a home without regard to whether defendant was able to pay for the premises; (b) it is on the weight of the evidence, in that it is calculated to lead the jury to believe that it is the duty of defendant to acquire and own a home as a necessary, and excludes the idea that he might rent or lease such a home; (c) because said charge nowhere instructs the jury that said premises would not be a necessary if purchased by defendant for speculative purposes, and not as a place of abode, and no such instruction is given the jury anywhere in the court's charge; (d) because it unduly magnifies the duty of defendant to furnish necessaries and a home as a necessary for defendant's family, and is calculated to lead the jury to believe that it is defendant's duty under the law to furnish his family a home without regard to his ability to pay for it, and that he should furnish such home by purchase, excluding his right to lease or rent premises for this purpose such as he is able to pay for; (e) because said charge is not applicable to the facts of the case, and not the law of this case, and is calculated to confuse the jury, and will confuse the jury, in that said charge fails to instruct the jury to distinguish between a house and lot as an investment, and a house and lot as a place of abode or shelter for the comfort of defendant and his family.

"In this connection, defendant tenders the court a correct definition of necessaries and a correct charge thereon, and requests the court to give same to the jury in lieu of the charge complained of above; the definition and charge tendered by defendant being as follows, to wit:

"By the term 'necessaries' as applied to the husband is meant such things as the husband should supply to his family, and which are suitable to their condition and station in life, their needs and wants, in so far as his ability will permit. The meaning of necessaries in law is similar to the meaning of such term in its ordinary sense. Ordinarily such things as food and clothing and shelter are considered necessaries; but other articles may also be classed as necessaries, depending in each case upon the situation of the minor, his station in life, and his financial ability to pay. In all cases the article or articles furnished the minor, in order to be necessaries in law, must concern the personal comfort of himself or his family; and if the article or articles furnished should pertain to his business or vocation or trade in life, and not to his personal comfort or the comfort of his family, then said article or articles would not be considered as necessaries. If you find from the evidence in this case that defendant acquired the premises as a speculative venture, and that same were not essential or necessary as a home or place of abode for himself and wife, then you may consider these facts in passing on the question as to whether the premises were purchased for the personal comfort of defendant or his wife, or otherwise."

[2, 3] As indicated in our former opinion, we do not think the court's charge as here complained of is on the weight of the evidence or calculated to unduly influence the jury to conclude that the premises constituted a "necessary" because "useful and suitable" for a home without regard to whether

defendant was able to pay therefor, or that it is calculated to lead the jury to believe that it was the duty of defendant to acquire and own a home as a necessity, excluding the idea that he might rent or lease such a home, nor do we think it reversibly erroneous in that it failed to instruct the jury that, if appellant's purchase of the premises in controversy was for a speculative purpose, they would find that the premises did not constitute a necessary.

In defining the word "necessaries," we apprehend that it is only required that the court state the necessary elements without which the thing under consideration will not constitute a necessary. In other words, the definition is affirmative in its nature and not negative. In giving the definition, it cannot be required to state all of the things which would take the subject under consideration beyond and outside of the necessary elements, and we see no vital objection to the court's definition of the term "necessary" as given to the jury. The facts, if true, that appellant was unable to pay for the home purchased, or that the purchase was made for speculative purposes, were defensive in their nature. The defendant did not plead that the circumstances and conditions in life were such that he had no reasonable expectation of being able to pay for the premises purchased. He did in a way plead that it was purchased for speculative purposes, but he made no request for the submission of either issue of fact, even if raised by the evidence. The failure to request the submission of the issues under our settled laws constitutes a waiver thereof. Moreover, it will be noted that in the concluding terms of the special charge submitted in connection with the court's charge, he only sought to have the jury instructed that the facts recited therein, including the alleged issue of a purchase for speculative purposes, might be considered "in passing on the question as to whether the premises were purchased for the personal comfort of the defendant or his wife, or otherwise."

On the trial defendant was permitted, without objection, to testify that his purchase was for speculative purposes, and in the light of this record it is asking too much of the credulity of this court to suppose that the able counsel who represented appellant did not 'avail himself fully of such defensive matter in his argument before the jury. The jury in weighing the testimony, as was their right to do, evidently disregarded appellant's statement on the trial that he purchased the property for speculative purposes. In behalf of appellee, Johnson, appellant's deposition, taken prior to the trial, was introduced in evidence. Therein appellant, in answer to direct interrogatory 9, stated:

"When I purchased this house from C. L. Johnson, I intended to make it a home for my-

self and wife. I thought property might go up and I could sell it for more than I paid. If I could not sell it, I intended to make it a home. I moved into it with her, and called it my home, and occupied it and used it as our home. I was a married man at this time, but was not 21 years of age. About the time I was purchasing this property I did not tell C. L. Johnson that I was not 21 years of age. I never told him my age, and he never asked me. My wife and I lived in this property as our home about 7 or 8 months. I refused to pay off the three notes which suit has' been filed against me on, and now held by C. L. Johnson, because I could not get the money to pay the balance due, nor could I borrow it from a loan company."

In answer to direct interrogatories, he testified:

"I keep house. During the past 12 months I have used what rent I have collected off of this house together with my other income for the purpose of living expenses of myself and wife, and have taken care of my sister-in-law for 10 months, my brother for 3 months, and his wife for 2 months."

Appellant, in answer to direct interrogatory 3, testified:

"This is the property that he deeded to me, situated on Butternut street, and into which I moved and occupied as a home shortly after buying the same. It is a frame dwelling, proper and suitable, and was used by me and my wife for a place to live. My wife and I lived on this property and occupied it as a home for about 7 or 8 months before we moved out of it."

In answer to direct interrogatory 4, he testified:

"When we moved out of these premises, we rented them out. It is a fact that we rented the same for $50 a month, and since that day have been collecting rent for the place. * * * I have used the money which I collected as rent off the place' for necessary expenses for myself and wife. * * * I have not now any of the money that I have collected as rent on this place."

In this connection it may be further stated that there is an entire absence of testimony tending to show that appellant was at any. time in the real estate business or engaged in any speculative occupation of the kind. He was a farmer and laborer, young and able, so far as the evidence shows, to perform remunerative work. And the fact, assuming it to be true that, after defendant's purchase of the premises in controversy for a home as he stated, he later concluded that he would sell the property, and placed it in the hands of a real estate agent for the purpose at an advanced price, by no means takes the case without the boundary of the court's definition of necessaries. Without further discussion of this branch of the case, we conclude that the court's charge in the respect complained of is not reversibly erroneous; in

fact, we think it substantially correct, and that appellant was, on the trial below, given full benefit of his present contentions.

[4] There is a further contention that the court erred in overruling defendant's objections to the evidence of appellee's witnesses McDavid and Rollins on the question of market value and the initial cost of the premises involved in the suit. The witnesses named were land agents. Both testified to having knowledge of the house and premises and to its situation in the city of Abilene. McDavid testified, among other things:

"That is a new house. * * * In July, 1920, when that house was bought, I would judge around $6,000 would be a fair reasonable value for that place. I am basing my statement of $6,000 on the sale of places similar to that. On sales that I have made of similar property and sales I know of * * * $50 to $60 a month would have been a fair, reasonable monthly rental value for this place."

On cross-examination, he further testified:

"I am not a little bit high on the market price or market value of this house in July, 1920. My estimate of it was not high at that time. Relative to $5,000 being a fair price for it at that time, I do not know of anything that could have been bought, located like that was, at that price. Relative to $5,400 being a fair valuation, at that time, I gave you my answer a while ago, about $6,000. I sold a number of places for more money than that. The location has a great deal to do with the value of a piece of property. * * * Fifty dollars would be cheap rent for that place without the use of the furniture. * * * This place is located in a good residence part of town."

Witness Rollins testified that he was in the real estate business, knew the parties, and had sold the place in controversy for Mr. Johnson to Mr. Newberry in July, 1920. He further testified:

"I will tell the jury how the trade came up. The young man and his wife came to my office to buy a place, and I had just gotten that place a couple of days before, and it struck me that it was just about the place they would like to buy, and I told them, I says, I would like to show it to you right now, and they said they had an engagement with somebody, and had just been looking at some property. I was afraid some other agent would see them and might sell them, so I asked them to let me show it to them at once, and we went out, and I showed them the place, and they bought it, and seemed to like it, and especially his wife seemed to like it very much.

"His wife was there with him at the time. He said he was going to work for, I think, maybe McCarty, and that he wanted to buy a home and settle down, and we went in and looked at the place, and a big rain came up, and we was there something like 1½ hours, I suppose. They said they could rent out one of the rooms, and have plenty of room for them, or something like that.

"Before they went to look, they told me they wanted to buy them a home. It was my understanding that they told me they wanted to buy a home, and didn't want to pay rent. When we were up there at the house, the big rain came up, and we were there an hour to 1½ hours. During that time we carefully looked at the house and its condition. The lady looked at the house thoroughly and went over it, and he did too, as far as that is concerned. We never went out to the garage. We didn't go to see the garage as the water was 4 or 5 inches deep. It was a very heavy rain. They said they had looked at several houses and that was the cheapest house they had seen. We traded right there while they were at the house. I think it was a new house; probably just been built. It was right brand new paint and paper and it looked like a brand new house. If it was an old house, I did not know it."

The appellee, among other things, testified that it cost him $4,970 to build the house, besides other expenses not included in that, such as insurance at the time and interest on the money paid for material for several months, etc. Appellant objected to all of this testimony on the ground that:

"There was no issue in the case as to the market value of the premises, or as to the cost of same, and that said evidence was immaterial and irrelevant."

The Commission of Appeals held that the contract of purchase by appellant was an executed one and that it could not be avoided on the ground that he was not of lawful age at the time he made it, but that he could not be held liable beyond the reasonable cost of the necessary purchase. So that we think the able trial court had the proper conception of appellant's liability and correctly admitted the proof objected to.

No other question presented by the assignments seems to be of sufficient materiality to require a discussion, and we conclude that the case was fairly submitted to the jury and that the evidence fully sustains the verdict and judgment below.

Before closing this opinion, however, it may not be improper to say that we concur in the conclusion reached by the Commission of Appeals, and think, as therein said, that the public policy of this state, as indicated by constitutional and legislative provisions, favors the acquisition of homes as a necessary incident of the present day advancement and condition of our people, and our former conclusion to the effect that at all events a married minor, as a matter of law, was entitled to disaffirm his contract for the purchase of a home after maintaining his majority, was based upon the case of Peck v. Cain, 27 Tex. Civ. App. 38, 63 S. W. 177, by the San Antonio Court of Civil Appeals. As stated in the opinion written by Judge Fly in that case, Cain executed a conveyance of a leasehold interest of 2 years in a rooming house at a stipulated sum per month and received as security for the payment of rents a lien from Peck upon certain furniture. As

we construed the opinion, the vendor, Cain, and vendee, Peck, entered into a contract, which, considered as a contract, was fully executed, as much so as the contract for the purchase and sale of the homestead in question. In that case, as in this, the conveyance was in writing as required by our statutes of fraud and that of an interest in land. In that case, as in this, part of the purchase price agreed upon was paid at the time of the execution of the contract. In that case, as in this, the vendor was required to do nothing further than he had done, nor was the vendee, as was the vendee in this case, required to do anything further than to make the payments as he had contracted to do. And we were unable to distinguish the cases in principle, and a writ of error having been denied by the Supreme Court in the Peck v. Cain Case, our opinion was as stated.

However, we cheerfully acquiesce in the final conclusion reached as announced by the Commission of Appeals and as approved by the Supreme Court, and there being no other question that we deem material, we accordingly overrule all assignments of error, and affirm the judgment below.