O. T. HAMLIN, Appellant, v. G. W. HAWKINS ET AL.—61 S. W. (2d) 348.

Division One, June 12, 1933.*

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 12, 1933.

*Hamlin, Hamlin & Hamlin* for appellant.

1100

*Sharp & Blunk* for respondents.

1102

HAYS, J.—This is an action in two counts, one in ejectment and the other to determine title. The defendants prevailed below and the cause is here on plaintiff's appeal. As no error is assigued upon the disposition made of the count in ejectment no notice need be taken of it. The facts alleged in the second count are substantially as follows:

One T. J. Shelton (the admitted common source of title) sold and by warranty deed dated February 3, 1920, conveyed to one Eagleburger, an infant between eighteen and nineteen years of age, an eighty-acre tract of land situate in Taney County, to-wit: The northeast quarter of the southeast quarter of section twenty, and the northwest quarter of the southwest quarter of section twenty-one, in township twenty-two of range eighteen, for a consideration of $3700. The vendee paid $1900 in cash and for the remaining $1800 executed his promissory note to Shelton due in ten months from that date and bearing interest from date at eight per cent per annum, and as security therefor executed a deed of trust of the same date to the use of said Shelton. Eagleburger attained his majority on May 14, 1922. Thereafter, on September 23, 1922, he filed in the circuit court of said county a suit to disaffirm said transactions and for a recovery of the $1900 paid. Upon change of venue that cause was transferred to the Circuit Court of Polk County, where on May 25, at the May Term, 1925, he was awarded a judgment and decree of annullment as prayed and for $1450 damages. The decree also divested Eagleburger of all title of said land and purported to reinvest the title in Shelton; on May 26, 1925, execution was issued on the judgment to the sheriff of Taney County, who on the same day levied it upon said land and thereafter sold the land at the price of $100 under execution on April 19, 1926, to the plaintiff, hereinafter referred to as the appellant, and accordingly executed his deed as sheriff to said purchaser. It is alleged that defendant bank had knowledge of all the facts and proceedings aforesaid, and it is further alleged that

the appellant became, through the conveyance and proceedings stated, and is the owner in fee of said land.

The answer specifically admitted each and all the allegations of the petition, save the knowledge which the bank was charged with possessing and the appellant's alleged ownership of the land. It alleged in substance: that defendant Bank of Hollister, hereinafter referred to as the bank, shortly after the date of Eagleburger's note, purchased the same in due course for value; that upon default in payment of the note said deed of trust was duly foreclosed on August 5, 1922, by trustee's sale and conveyance to Shelton; that thereafter on the same day Shelton executed to the bank his note for $1910 and as security therefor executed a deed of trust on the land to the use of the bank; that same was upon default duly foreclosed by sale to the bank and trustee's deed accordingly executed on August 21, 1926, and duly filed; that Eagleburger by quitclaim deed dated April 3, 1923, reconveyed the land to Shelton.

No reply was filed, but the trial proceeded as if one had been filed in the form of a general denial of the new matter in the answer. Defendant Hawkins is impleaded as a tenant of the bank in possession.

The various conveyances referred to in the pleadings, recorded on or about their respective dates. were all introduced in evidence, as was also the record as made in the suit mentioned; but it nowhere appears in the printed record that the $1800 note, or any purported indorsement thereon was introduced. There was oral evidence showing that the bank was in possession of the land. Also testimony of the president of the bank to the effect that in the bank's purchase and the delivery of the $1800 note from Shelton it paid therefor the sum of $1800 by placing said sum to Shelton's account in the bank. It further appeared from the witness's testimony that the bank first learned of Eagleburger's minority shortly after the latter's said note fell due, when it was apprised of the minor's intention to disaffirm, and it had knowledge of all subsequent matters connected with the disaffirmance and legal proceedings; that the note was transferred by Shelton to the bank on or about its date and said sum so placed to Shelton's credit. That was all the testimony relating to the transfer of the $1800 note. The witness further testified that Shelton's note for $1910, referred to above, represented the indebtedness of Shelton to the bank on account of principal and interest of the prior Eagleburger note for $1800; that since acquiring the trustee's deed of date August 21, 1926, the bank has been in possession of the land, claiming ownership in fee.

■ I. First. the appellant's claim of title will be examined. It is said that the execution sale was void because not made before

1104

the end of the second term of the Polk County Circuit Court, from which it was issued, and the writ had therefore become *functus officio*. To sustain the point the bank relies upon Section 1606, Revised Statutes 1919, Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891, and Dinkins v. Gottselig, 90 Mo. App. 639. The statute cited is a general one and provides that, "every execution issued from any court of record shall be made returnable to the next succeeding term, unless the plaintiff . . . shall otherwise direct; then it shall be the duty of the clerk issuing the same to make it returnable to the second succeeding term." Of the citations, the Dinkins case is wholly without application, while the Blodgett case holds merely that, where land is sold under execution during the second term of court after its issuance, the presumption obtains that in the absence of aught to the contrary the clerk who issued and the sheriff who sold under the execution obeyed the dictates of duty and complied with the law. The case at bar is governed by what is now Section 1209, Revised Statutes 1929, which is a special statute and may be considered as an exception grafted on the general statute set out hereinabove. This section provides that when, as here, an execution is issued from a court of record from one county and sent to the sheriff of another county in this State, and the same is levied on real estate, and from any cause the circuit court of the last mentioned county shall not be held before the return day of the execution the sheriff shall retain the same, and the levy so made by virtue thereof shall remain in full force and effect until there shall be a term of the circuit court in the latter county, at which the land may be sold. Here the official acts of the clerk and of the sheriff, respectively, were within the statute and the execution sale was not void; and the lien of said judgment attached at the time of the levy, May 26, 1925. But the question of whether or not title passed thereunder remains to be hereinafter determined.

II. Title as claimed by the respondent bank is predicated upon the trustee's deeds and the quitclaim deed in evidence. No question is raised upon those deeds themselves, but only upon the deeds of trust which they purport to foreclose. The consideration of the note secured by the deed of trust from Shelton to the bank is assailed as being invalid because it is the same as that of Eagleburger's said prior note.

Let it for the moment be assumed, for the discussion, that the consideration of the second, or $1910 note executed to the bank was good and sufficient or is not vulnerable. At the time it was executed along with its security, August 5, 1922, the maker, Shelton, had no title to the land purporting to be conveyed by the deed of trust. But on April 19, 1923, he acquired the title under Eagleburger's

quitclaim deed (Grooms v. Morrison, 249 Mo. l. c. 552, 155 S. W. 430), and under a well-settled rule of equity the title thus acquired passed immediately, by inurement, to the trustee in said deed of trust, just as effectively as though the title had been in Shelton when he executed the latter, and passed through said trustee's deed to the bank; this by force of the statutory covenants of warranty and of assurance contained in the deed of trust. [Hume v. Hopkins, 140 Mo. 65, l. c. 72, 73, 41 S. W. 784, and cases cited; Seaman v. Seaman, (Mo.), 181 S. W. 22.] And in such case the lien of this deed of trust constituted, at least and as against liens subsequently imposed, a valid and thereafter subsisting lien on the land from the date of the execution of said quitclaim deed.

III. Reverting now to foundational questions raised on the original transactions and their relation to the matter discussed in the preceding paragraph.

It is proposed, and must be conceded, that the initial note and its security, were, under the statute relating to minors (R. S. 1919, sec. 2218) subject to disaffirmance by the minor within two years after attaining his majority, and that upon such disaffirmance those instruments were rescinded and annulled *ab initio*. [31 C. J. 1019; Craig v. Van Bebber, 100 Mo. 584, 13 S. W. 906.] Yet, down to the time of their avoidance the instruments were merely voidable, not void. [Shipley v. Bunn, 125 Mo. 445, 28 S. W. 754; Robinson v. Allison, 192 Mo. 366, 91 S. W. 115.] It inevitably follows, as contended by appellant, that the trustee's deed to Shelton was without effect upon the title to the land.

IV. Respondent's defense is now in this posture: The note transferred to the bank by Shelton is void. The deed of trust given to secure it was of no avail. The bank's woes came unawares after its acceptance—in good faith so far as shown by the evidence—of the transfer of the note. They were brought about by transactions had between Eagleburger and Shelton, who have adjusted their rights between themselves. All equities of Eagleburger growing out of the transactions are presumably merged in the decree, to which the bank was not a party. No equities of Eagleburger were transmitted to the appellant. To the latter the same rule applies that applies to every purchaser at sale under general execution, *caveat emptor*.

The note is assailed on the grounds, substantially (1) that the bank was not a holder thereof in due course for value, because the consideration thereof failed from the effect of the decree; (2) that the transfer was inoperative because without consideration; and (3) that, in as much as the alleged consideration was the self-same as that of the later note, with its accompanying deed of trust, executed

1106

by Shelton to the bank, the consequent trustee's deed in foreclosure was ineffectual to pass the land to the bank.

Upon the facts in this record we deem it unnecessary to consider those questions or appellant's citations of authority relating thereto, all of which we have carefully examined. We regard the case on those points as controlled by rules quite different from those relied upon by counsel.

The nature of the transfer is shown in the record to the extent only of the delivery of the note to the bank and the placing of the credit by the bank to Shelton's account. It is not contended that the note was not a negotiable instrument within the meaning of the statute. [R. S. 1919, sec. 788.] Nor is there any point raised upon the sufficiency of the negotiation *per se* to the bank, the appellant insisting, with respect to the transfer, only that it is not shown to have been by indorsement. Since it does not so appear, an alternative inference may properly be drawn that the note was payable "to bearer," as instruments, to be negotiable, must be so payable or payable "to order." [R. S. 1919, sec. 817.] Shelton was in lawful possession thereof at the time.

In the circumstances Shelton had a right at the time to make the transfer, notwithstanding the note's infirmity of a contingent avoidance. The transfer in question was a secondary and collateral obligation, of no concern to the maker or to the creditors of the transferor. By legal implication it imposed certain undertakings upon the transferor, but those undertakings were for the sole benefit of the transferee. [R. S. 1919, sec. 851.] "'The lawful possession of a note confers upon the holder the right to transfer it. It is a general rule of law, and the maker cannot question the right of transfer.' [8 C. J. 366.] It follows that if a party to the note may not question the right to transfer, the right may not be attacked collaterally." [In re Martin, 219 Mo. App. 51, 61.] We held in Powers v. Nelson, 19 Mo. 190, that it is no objection to a recovery on a note that it was indorsed after it was due and without consideration, no defense being shown. It was decided in Goldstein v. Winkelman, 28 Mo. App. 432, that the maker of a promissory note cannot defend in a suit by a transferee, on the ground that the transfer was without consideration, or was in fraud of the payee's creditors. In the case of Banister v. Kenton, 46 Mo. App. 462, it was ruled that the maker cannot interpose the want of consideration for the transfer as a defense to the suit of the indorsee, and that such want of consideration is a good defense only in an action between the indorsee and his immediate indorser. It seems clear that on this, the crucial question, the case at bar is governed by the principles illustrated in this discussion.

It is apparent that the inception of the lien of the bank's deed of

trust was long prior to the lien of the levy, and therefore superior. It follows that the trustee's deed to the bank in foreclosure of the superior lien is paramount, and, notwithstanding the sheriff's deed was earlier executed than the other, the sheriff's conveyance could not and did not operate upon or effect the title to the land in suit.

The judgment is affirmed. All concur.