Joe D. MERRICK, Plaintiff-Appellant,

v.

Rolla STEPHENS, Defendant-Respondent.

No. 7875.

Springfield Court of Appeals.

Missouri.

July 30, 1960.

Motion for Rehearing or to Transfer
Overruled Sept. 9, 1960.

Charles D. Tudor, Joplin, for plaintiff-appellant.

Stanley P. Clay, Joplin, for defendant-respondent.

RUARK, Judge.

This is an appeal by an unsuccessful plaintiff from a judgment entered September 16, 1959, which judgment denied to plaintiff recovery for payments theretofore made on a mortgage deed of trust and which, on defendant's counterclaim, found plaintiff indebted to the defendant on such mortgage and decreed foreclosure of the lien of the same, with the further provision that if the real estate security did not fully satisfy the indebtedness the balance be recovered by general levy.

The plaintiff-appellant, Joe D. Merrick, was a minor and did not attain his twenty-first birthday until *March 1, 1954.* The transactions here mentioned in reference to the note and mortgage occurred in *December of 1952* and thereafter during a period prior to plaintiff's majority. Appellant's counsel frankly conceded in argument that Merrick was emancipated. Hence, we will not belabor the preliminary facts further than to furnish some background.

When plaintiff was a child, he had received some money in settlement of a personal injury lawsuit. Later some of those funds were used to buy at least one car, later a small registered Guernsey herd, and still later some money was used when he decided to get married. Since before graduation from high school at the age of nineteen he was employed at a weekly salary. After graduation he was regularly employed. He drew his own salary, spent it as he saw fit, and maintained his own bank account. In September 1952 he enlisted in the Air Force. When he enlisted he sold his Guernsey herd and put the money in his bank account. He received a medical discharge from the Air Force on October 27, 1952.

As to his physical appearance, about all we know is that Merrick said he wore glasses and that at the time of the transactions in question he was "bigger and heavier" than he was at the time of trial in October 1956. Another witness said he "looked like" he was twenty-one and "I can't see much change."

When Merrick decided to join the Air Force he became engaged and gave his fiancee an engagement ring. After he was discharged he and his fiancee went house hunting. They met one Boyd, then a salesman for the defendant, at a home which was on open house display. They told Boyd they were interested in buying a home. Later they met Boyd at defendant's office, looked over a display board, and selected

the type of property they wanted. He showed them some property, and negotiations began. The house they decided to buy belonged to a Mr. and Mrs. Swiney. The price was $4,500 and the property was subject to a mortgage in the amount of approximately $2,750. Merrick had to finance the deal, and Boyd took an application for a loan. In so doing, he filled in a blank form which shows, among other things, the name, residence, and age of the appellant. The figure filled in the blank for age is twenty-one. Boyd testified that this entry was made from Merrick's statement. Merrick denies that he told Boyd he was twenty-one. Later Merrick and his fiancee went in to talk to defendant-respondent Stephens about the financing. Stephens said the girl looked young and that he commented, "Aren't you a little young?" and that plaintiff Merrick spoke up and said, "That is all right. I am buying the property myself. We are not married yet." Merrick says he has no recollection of such statement. The notary public who later took Merrick's acknowledgment to the deed of trust testified that as a part of her formalized acknowledgment she always stated, "You, being of lawful age. * * *," that she did so with Merrick, and that he answered yes. Merrick denies this. He says that he understood a purchaser was "supposed" to be twenty-one. He had previous experience in the purchase of cars. He wondered why they didn't ask his age, but no one did and he didn't volunteer it. Evidently the capable and experienced circuit judge did not believe Merrick's denials. Neither do we.

The deal was consummated. Stephens had a commitment for the loan from one Scott (who held the Swiney loan) but took it in the name of a straw party, advanced his own money, and closed the deal by which Merrick took clear title from Swiney. (Later the note was transferred to Scott.) Merrick paid a total of $1,112.96 by check on his bank account to cover the down payment plus expenses and gave the deed of trust in the amount of $3,400. This mortgage called for monthly payments of $45.

Neither the parents nor the prospective inlaw parents had anything to do with the transaction.

Shortly thereafter Merrick made some small changes in the house, purchased furniture, and on February 15, 1953, was married and moved in. Of this marriage a child was born the following December. In June 1953 Merrick and his bride were separated. Upon such separation Merrick went to Wichita to work for Boeing Aircraft. During the period between the purchase and the separation Merrick paid in to Stephens's office as payments on the mortgage the total sum of $225, which Stephens remitted to Scott, the then mortgage holder. This is the sum the plaintiff-appellant sought to recover by his petition in this action.

Merrick says the only reason he gave up the house was the separation. He had no further use for it. After the separation in June of 1953 he went back to Stephens and listed the property for sale (at $5,250) and entered into a rental agency agreement. The premises first were rented for $50 per month. Stephens credited Merrick with $45 (as payment on the loan to Scott) and endeavored to forward the balance each month to Merrick, but by that time this suit was in the making, and Merrick, on the advice of his counsel, refused to accept the checks for the overage between rental and mortgage payments. On June 25, 1954, Merrick filed his notice of disaffirmance of the whole transaction as is provided by Section 442.080.

All we have in the record concerning the pleading begins with what is denominated Count II of plaintiff's (now appellant's) second amended petition (filed June 11, 1956). In this Count II of such second amended petition plaintiff (Merrick) charges that he executed a note for $3,400, payable $45 per month, to a straw party for defendant Rolla Stephens; that said sum was supposed to be paid to the Swineys as part payment for the property; that plaintiff paid to Stephens the sum of $225

as monthly payments; that on July 31, 1953, plaintiff repudiated the obligation and demanded the return of the payments "so made; that plaintiff became twenty-one on March 1, 1954, and that he had filed written disaffirmance of the contract. The prayer was for $225 plus interest.

The defendant (now respondent) filed an answer which refers to *a previous judgment* rendered on behalf of Merrick against the Swineys, *stating that it is premature* and null and void. He admits making the $3,400 loan as agent of Scott, and then makes affirmative allegations as follows:

(1) At the time of the deal plaintiff was emancipated and *sui juris*.

(2) Stephens acted strictly and only as agent for Swiney and Scott and handled the money only as a conduit.

(3) *Plaintiff has fraudulently conspired with third parties to remove the title to the property from himself and from the Swineys so that he is unable to make the defendant whole* and has never done anything which would make it possible to restore the status quo.

(4) *Plaintiff represented himself to be of age and defendant relied upon these representations and plaintiff is now estopped.*

(5) Plaintiff has never effected a rescission because he has never tendered back anything he received.

(6) As to the $225, the plaintiff was in possession and had the use of the premises and if he did not own them he was liable for the rent.

(7) *The purchase was for a home and was a necessity* for which plaintiff is liable in any event.

(8) Plaintiff actually paid only $1,100 and the balance ($3,400) was a simultaneous loan, a part of the one transaction.

*That through fraudulent manipulation after he became of age the plaintiff has caused title to pass to third persons who bought at execution sale* subject to said deed of trust, and plaintiff has ratified and has no further interest in the property.

By way of counterclaim the defendant (now respondent) asserted the deed of trust to Scott and its later repurchase by Stephens and default in payment by which it became due. The counterclaim further contains the statement that "defendants Richard G. Lewis and Frances E. Lewis, husband and wife, have or claim some interest which is junior to the lien." The prayer is that the equity of redemption be foreclosed; that defendant recover the amount of "debt and damages"; that the property be sold to satisfy said "debt, damages, and costs"; and that the residue be levied out of the goods, et cetera, of the plaintiff.

Now here the picture becomes more cloudy. There was another judgment in this case. We gather from the colloquy of counsel before court and from the exhibit (sheriff's deed of date September 9, 1954) showing sale of the property under execution the following facts. But as preface to our "gathering," there is no record of any pleadings or judgment, or exhibits of such, to justify our assumptions other than the exhibit in reference to the execution sale and statements of counsel to the court below and in this court. The whole record of the whole case is not in the transcript. We note that at trial below the respondent was insistent that the whole proceeding, including that involving the first judgment, be considered in the trial on Count II both in that court and "in the appeal of the case," and to this the plaintiff-appellant agreed, subject to admissibility. The transcript does not show any order for separate judgment or any judgment (except the one appealed from) which we can say was intended as an order for separate final judgment. Plaintiff's original suit evidently included a count (probably Count I) against the Swineys and the respondent Stephens for repudiation of the sale and recovery of the amounts paid therefor. Apparently

process was obtained against the Swineys by attachment of the house on publication. Plaintiff then took a default judgment on Count I (whether interlocutory or not we cannot say from the record before us) [1] against the Swineys for $1100 and costs. And, as we gather from the recitals in the sheriff's deed, a special execution was issued and the property was sold to Richard and Frances Lewis on a bid of $1200. Such purchasers are the daughter and son-in-law of plaintiff Merrick's counsel in all these matters, which fact respondent appears to believe affects the question of notice.

In concluding our statement of the facts we should say that there is no indication whatever that the loan of $3400 was not actually made on and after a commitment by Scott, and it plainly appears that Stephens repurchased the note only after Merrick had disaffirmed (and perhaps brought suit) in order that he might make good to his client and assume any loss or unpleasantness which might be engendered by this suit.

The plaintiff does not contend that there was, and we do not find any, overreaching of the plaintiff, or that the house was not worth what he agreed to pay for it. The only evidence on this question is to the effect the price was reasonable. The questions in the case arise solely out of the fact of plaintiff's infancy at the time of the purchase.

Generally speaking, the contracts of an infant are voidable. 43 C.J.S. Infants § 71, p. 161 et seq. And the disaffirmance of the transaction in accordance with Section 442.080 RSMo 1949, V.A.M.S., under the general rule would render the mortgage void from the beginning. Phillips v. Savings Trust Co. of St. Louis, 231 Mo. App. 1178, 85 S.W.2d 923, 925; Hamlin v. Hawkins, 332 Mo. 1098, 61 S.W.2d 348; Windisch v. Farrow, Mo.App., 159 S.W.2d 392. But there are a number of exceptions and limitations to the rule. One of them is that upon rescission the infant will be required to return and restore whatever he is able to return and restore as a price of his rescission. 27 Am.Jur., Infants, sec. 96, p. 819; Sassenrath v. Lewis Motor Co., Mo. App., 246 S.W.2d 520; Freiburghaus v. Herman Body Co., Mo.App., 102 S.W.2d 743; Western Life Ins. Co. v. White, Mo. App., 331 S.W.2d 19, 22, 26; Craig v. Van Bebber, 100 Mo. 584, 13 S.W. 906.

Another exception is that of qualified estoppel. If the minor has reached "the age of discretion" and has misrepresented his age and in so doing has misled the person with whom he dealt, the equity courts will not permit him to take advantage of his own fraud in order to mulct the opposite party.[2] While it would seem that a pure estoppel would preclude the deceitful party from denying representation in respect to age,[3] and this would have the practical effect of leaving the contract wholly in force, the law of Missouri now seems to be that the estoppel arising from an infant's misrepresentation of his age is a limited one. The fairly recent case of Byers v. Lemay Bank & Trust Co., 365 Mo. 341, 282 S.W.2d 512, has cited and reviewed most of the prior decisions on this subject. That case denied to the infant the right to re-

---

1. Stephens was a party defendant to Count I. The judgment appealed from recites, "Plaintiff having dismissed Count I of his petition * * *" Colloquy *indicates* that Stephens was perhaps dismissed from Count I before the default was taken, but we are not sure. This default was apparently taken before the judge who rendered the judgment here appealed from was assigned to the case.

2. Annotation 50 A.L.R. 559; Annotation 90 A.L.R. 1141; Pomeroy's Equity Jurisprudence, 4th ed., vol. 2, sec. 945; Page on the Law of Contracts, 2nd ed., vol. 3, sec. 1601, p. 2762; Black on Rescission and Cancellation, vol. 1, sec. 302, p. 764.

3. Ruckert v. Moore, 317 Mo. 228, 295 S.W. 794, 800; Sidney Weber, Inc. v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291, 297; United Finance Plan v. Parkview Drugs, Mo.App., 250 S.W.2d 181; Emery v. Brown Shoe Co., Mo., 287 S.W.2d 761.

scind and recover back payments which had theretofore been applied on mortgaged cars he disposed of (and which consequently could not be delivered in rescission). But it likewise denied the bank its counterclaim on the plaintiff's unpaid notes on the theory that the action for enforcement of the executory portion of the arrangement would not lie. The proper action on account of such notes was said to be in tort for deceit.[4] Appellant contends that under authority of this case the respondent's remedy is limited to defense and set-off and that he may not have any affirmative relief.

■ But the Lemay case did not concern the attempt of the mortgagee to protect his lien. The mortgage given by the plaintiff in this case was part of "one complete transaction" which involved the transfer of title to the plaintiff. Plaintiff could not get title until he gave the mortgage. In practical effect plaintiff took the title subject to the lien. While the mortgage given by the sellers was paid off and this one replaced it, the plaintiff's mortgage in this case had some of the attributes of a purchase money mortgage.[5] The mortgage lien represents money which the minor never contributed, money which came out of the pocket of the mortgagee; and it is money which never went into the plaintiff's hands and which can be restored only through the enforcement of the lien. Had the money gone directly into the hands of the plaintiff, the defendant might have reclaimed it in a proper action.[6] But here the money has gone to the sellers Swiney, and they, as would appear from the attachment proceeding, are gone. The only chance for the defendant to recoup is to preserve his lien.

The purchasers at the special execution sale did not acquire any equities of the infant. They took the title subject to the state of the record which showed this mortgage. They bought under the rule of caveat emptor. Hamlin v. Hawkins, supra, 61 S.W.2d 348, 351; Munday v. Austin, 358 Mo. 959, 218 S.W.2d 624. And the sale was for sufficient amount to cover the down payment which the judgment in attachment (presumably) covered. The sustaining of this lien would work no detriment to the plaintiff, unless he is in league with the purchasers at that execution sale and is desirous of presenting those buyers with a $4500 house free of encumbrance in return for their $1200 bid—all to the loss of the lender who in good faith supplied the funds which made the purchase possible.[7]

■■ It is often said that the defense of infancy is a shield, not a sword with which to wreak injury on unsuspecting persons. Byers v. Lemay Bank & Trust Co., supra, 282 S.W.2d 512; Gerkey v. Hampe, Mo.App., 274 S.W. 510; Ryan v. Growney, 125 Mo. 474, 28 S.W. 189; Annotation 6 A.L.R. 416. And, as previously stated, rescission is allowed only when the mulcted party has been restored, in so far as possible, to that which he has been parted from. Neither should the minor be permitted to claim invalidity and at the same time join in acts which prevent restoration.[8] And there is authority to the effect that if the contract was for the benefit of the infant and the benefits received are of such nature that they cannot be returned or restored, then there can be no rescission.[9] In some situations equitable estoppel is equally as applicable to infants as to adults. The basis of the rule is simple justice and good

4. See Royal Finance Co. v. Schaefer, Mo. App., 330 S.W.2d 129.

5. See Knaggs v. Green, 48 Wis. 601, 4 N.W. 760, for a somewhat similar situation.

6. Wray v. Hale, 139 Mo.App. 635, 124 S.W. 38.

7. We note the record shows there is pending another action by the purchasers Lewis, "to clear the title."

8. See Keys v. Tarrant County Building & Loan Ass'n, Tex.Civ.App., 286 S.W. 593, 597.

9. Black on Rescission and Cancellation, vol. 1, sec. 310, p. 782; see Kerr v. Bell, 44 Mo. 120.

conscience. Equity as a code of conscience takes cognizance of delicate distinctions between right and wrong in human conduct. Roach v. Kohn, 361 Mo. 597, 235 S.W.2d 284, 288. Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents.[10] It looks to the substance rather than the form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality.[11] And once rightfully possessed of a case it will not relinquish it short of doing complete justice.[12] It weighs the equities between the parties and adopts various devices to protect against unjust enrichment. Defendant would at least be subrogated to the extent of the lien against the Swineys which his mortgage paid off.[13] What was said by Barrett, C., in Tucker v. Holder, 359 Mo. 1039, 225 S.W.2d 123, at page 126, in respect to subrogation could be said equally about estoppel as applied to the facts in this case, viz., "But not only does subrogation not depend upon the validity of the grantee's title, which in spite of the warranty deeds in this case eventually failed, it is the device of equity to prevent unjust enrichment and to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it."

We think that the estoppel in this case should reach to the extent of denying plaintiff's claim and also of refusing the plea of infancy to the foreclosure of the mortgage lien. But under the holding in the Lemay case that portion of the judgment which *permits general levy* for any deficiency could not be sustained if estoppel were the *only* ground. There are, however, other factors here involved which are not even touched upon by Lemay. The respondent has asserted the rules of both necessities and emancipation.

■ While our Missouri cases seem to have approached this question rather cautiously, it appears that emancipation operates to concern the rights and liabilities which arise out of the parent and child relationship.[14] We find none, and are not cited to any, which makes the flat holding that, solely because of emancipation, the infant is *sui juris* for all purposes. And the general rule is that emancipation does not, in and of itself, operate to make the infant *sui juris*,[15] although it is of practical importance in deciding many questions under the law of necessaries. Page on the Law of Contracts, 2nd ed., vol. 3, sec. 1572, p. 2716.

■ An infant is liable for his necessities. Just what *are* necessaries has no exact definition. The term is flexible and must vary according to the facts of each individual case. It depends upon many things, including the particular circumstances of the minor, the actual need, and the use to which the purchased article is to be put. 43 C.J.S. Infants § 78b(1), p. 189, et seq.; Williston on Contracts, 3rd ed., vol. 2, sec. 241, p. 52; Freiburghaus v. Herman Body Co., supra, 102 S.W.2d 743;

10. 30 C.J.S. Equity § 12, p. 331, § 104, p. 506 et seq.; Hydesburg Common School Dist. v. Rensselaer Common School Dist., Mo.App., 218 S.W.2d 833, 836.

11. Johnson v. United Rys. Co., 281 Mo. 90, 219 S.W. 38, 67.

12. Anison v. Rice, Mo., 282 S.W.2d 497; Rockhill Tennis Club of Kansas City v. Volker, 331 Mo. 947, 56 S.W.2d 9, 20.

13. For discussion of some of the equities on an invalid mortgage, see Berry v. Stigall, 253 Mo. 690, 162 S.W. 126, 50 L.R.A.,N.S., 489.

14. Wurth v. Wurth, Mo.App., 313 S.W.2d 161; Swenson v. Swenson, 241 Mo.App. 21, 227 S.W.2d 103, 20 A.L.R.2d 1409; see Evans v. Kansas City Bridge Co., 213 Mo.App. 101, 247 S.W. 213.

15. 43 C.J.S. Infants § 28, p. 91; 27 Am. Jur., Infants, sec. 5, p. 749; Wickham v. Torley, 136 Ga. 594, 71 S.E. 881, 882, 36 L.R.A.,N.S., 57; Wuller v. Chuse Grocery Co., 241 Ill. 398, 89 N.E. 796, 28 L.R.A.,N.S., 128.

Rhodes v. Frazier's Estate, Mo.App., 204 S.W. 547; Paul v. Smith, 41 Mo.App. 275.

But if we have a combination of emancipation with necessity there is often an enlarged and more extended necessity. If the minor is emancipated and does not have the parental roof for shelter, and if he is married (or marrying), with a wife for whom he is obligated to furnish shelter and lodging, the purchase or lease of a home can, depending upon the individual circumstances, become a *necessity*. It has been so held. Johnson v. Newberry, Tex.Com. App., 267 S.W. 476, and Newberry v. Johnson, Tex.Civ.App., 274 S.W. 667; Lindsey v. Hubbard, 74 S.Dak. 114, 49 N.W.2d 299; Ragan v. Williams, 220 Ala. 590, 127 So. 190, 68 A.L.R. 1182; State ex rel. Myers v. Hodge, 129 W.Va. 820, 42 S.E.2d 23.[16] We believe that under the factual situation in this case the house should be considered as a necessity.

The difficulty in enforcing contracts for the purchase of necessary lodging or home by emancipated minors is compounded by the manner of arriving at the amount of recovery. The general, but not unanimous, rule has been said to be that liability of infants (as a general class of persons) for necessaries (as a general class of objects) is not based on express contract but on contract implied in law. Hence in theory at least recovery is for the reasonable value and not for the purchase price. Williston on Contracts, 3rd ed., vol. 2, sec. 240, p. 49; Page on the Law of Contracts, 2nd ed., vol. 3, sec. 1586 (but see note 1 thereunder); 43 C.J.S. Infants § 78c, p. 194; see O'Donniley v. Kinley, 220 Mo.App. 284, 286 S.W. 140.

■ But in respect to certain types of contract and under certain conditions it has been held that the express contract will be enforced subject to the limitation that such enforcement will not permit the over-reaching of the minor; and (under such circumstances) the contract price will be reduced to the reasonable market value. See 27 Am.Jur., Infants, sec. 16, p. 759; 12 L.R.A. 859, anno.; also Williston on Contracts, vol. 2, sec. 240, p. 50 (note 1). Or, stated another way, recovery on the express contract will be limited to the extent of the reasonable value. O'Donniley v. Kinley, supra, 286 S.W. 141; Johnson v. Newberry, supra, 267 S.W. 476. "We apprehend, however, the better doctrine to be that an infant may make an express written contract for necessaries, upon which he may be sued; but that, by showing the price agreed to be paid was unreasonable, he can reduce the recovery to a just compensation for the necessaries received by him." Askey v. Williams, 74 Tex. 294, 11 S.W. 1101, 5 L.R.A. 176.

In this instance there is no evidence that the plaintiff was overreached and no contention that the house was not worth the price paid. The only evidence on this question is the other way. The apparent rental value and the actual rent paid (until this controversy arose) was in excess of the payments required by the mortgage. " * * * [T]he object of the law is not solely the protection of the infant, but rather an adjustment of his rights and duties in such a way as will promote the general well-being, * * * " Page on the Law of Contracts, 2nd ed., vol. 3, sec. 1570, p. 2714. It is general knowledge that in these times literally hundreds of thousands of our young citizens, not yet twenty-one years of age in time (although they may actually be more mature in fact than many people who "never grew up") become emancipated, assume the responsibilities of adults, and have wives and children whom they are obliged to furnish with a home. It is also general knowledge that in the majority of instances these younger citizens do not have the funds to pay all cash, and this incidentally is not a circumstance which afflicts only persons less than twenty-one years old. Yet it is said to be *the public*

16. See Ballinger v. Craig, 95 Ohio App. 545, 121 N.E.2d 66; Burnand v. Irigoyen, 30 Cal.2d 861, 186 P.2d 417.

*policy to encourage the ownership of homes.* It places a severe handicap upon these younger citizens to say that they are incapable in all instances of binding themselves to an obligation calling for the future payment, such as a note and mortgage. For what private person or institution would be willing to advance the mortgage funds if the obligation itself is subject to be cast aside and there be substituted a recovery on implied contract, or if the liability be sustained as to only the executed portion of the contract? Such a result, while imposing the responsibilities of an adult, denies the means to cope with that responsibility. The purpose of the exception as to necessities is defeated if the infant cannot bind himself to an express contract to pay for a necessity which he cannot otherwise acquire.

We do not find it necessary to decide whether or not under circumstances of emancipation and apparent maturity the better rule would be to enforce the contract as to parts both executed and executory and leave it to the courts of equity in individual circumstances and situations to reduce the amount of the contract price to the reasonable market value in those instances where it be found that the minor paid too much. All we decide in this case is that, based on the peculiar facts before us, which involve a combination of age of discretion, apparent maturity, deceit, estoppel, lack of restitution, emancipation, and necessity, the plaintiff should be held to his contract and the judgment should be affirmed.

It is so ordered.

STONE, P. J., and McDOWELL, J., concur.