BERTHA STREETER, RESPONDENT, v. WASHINGTON FIDELITY NATIONAL INSURANCE COMPANY, A CORPORATION, APPELLANT.—68 S. W. (2d) 889.

St. Louis Court of Appeals. Opinion filed March 6, 1934.

Motion for rehearing overruled March 21, 1934.

*Martin Farrow* for appellant.

36

*John P. Griffin* for respondent.

McCULLEN, J.—This suit is based upon a policy of insurance issued by appellant, defendant below, and was commenced in a justice of the peace court, where there was a judgment for respondent, hereinafter called plaintiff. Defendant appealed to the Circuit Court of the City of St. Louis, where the cause was tried before the court and a jury, resulting in a verdict and judgment for plaintiff for

$477, the amount named in the policy, and interest of $24.42, to which was added a penalty of $25 and attorney's fees of $125 for vexatious refusal to pay, the total amount of the judgment being $654.42. Defendant brings the case to this court by appeal.

We are informed by appellant's abstract of the record that the petition was in conventional form, with a prayer for the principal sum, interest, penalty and attorney's fees.

The abstract of the record does not show what kind of answer was filed by defendant.

The evidence shows that the policy was issued by defendant on September 8, 1930, application therefor having been made by A. B. Cannon, the insured, on August 27, 1930. The insured died on September 14, 1931. The premiums on the policy were all paid. Defendant was duly notified of the death of the insured and proof thereof on forms furnished by defendant was duly made by plaintiff, as beneficiary, and delivered to defendant.

The policy which was read in evidence on behalf of plaintiff, was dated September 8, 1930. It shows the name of the insured, A. B. Cannon, and that the weekly premium was forty-five cents. It contained the following recital:

"Insured requests that, in event of death, proceeds be paid to Bertha Streeter."

The policy also contained the following provision:

"If the insured is not . . . in sound health on the date hereof, . . . the company may declare this policy void, and the liability of the company . . . in the case of any claim under this policy shall be limited to the return of premiums paid on the policy. . . ."

Plaintiff also introduced in evidence a certificate of death from the State Board of Health, showing the name, residence and date of death of the insured. It contained the following statement:

"The principal cause of death, and related causes of importance, were as follows: 'Diffuse peritonitis (nontubercular), due to operation for ruptured or perforated ileum, cause unknown.'"

Plaintiff gave testimony to the effect that she never went through a form of marriage ceremony with the insured, but had lived with him as his "common law wife," and did not learn he was married until after his death. She testified that within two or three weeks after the delivery of proof of death to defendant, its representative offered her $40 in settlement of her claim; that this offer was soon thereafter raised to $50. Later on defendant offered to pay her $200 in settlement of her claim, the reason given by defendant for not paying the full amount of the claim being that the insured was ruptured at the time the policy was issued. These offers of less than the full amount of the policy were all rejected by plaintiff.

Plaintiff further testified that defendant's representative told her

that the company was not liable because the insured's rupture had existed for more than a year, and that he was making her such offers of settlement to see what he could do for her. She stated that she never found out what caused the death of insured.

Plaintiff's testimony showed that insured was an asphalt raker; that he went to work on Saturday, September 12, 1931, was hurt some time during that day, was taken to the hospital from the job where he was working, and died some time before 6:30 A. M., on September 14, 1931.

Catherine Hayes, a witness for plaintiff, testified that she had known the insured about five years, and that he had never complained of being ill; that he worked all the time; that he was a large man, weighing over two hundred pounds, and appeared to be well a few days before he died.

On cross-examination this witness stated she did not know whether the insured was ruptured.

F. P. Sullivan, a lawyer, testified that in his opinion $250 would be a reasonable fee for services performed by plaintiff's attorney in the prosecution of her claim against defendant. The witness was asked to assume as true, facts embodied in a hypothetical question describing the services rendered to plaintiff by her attorney in the case in connection with her claim. No objection to the question was made, and the witness gave his opinion, as above stated.

On cross-examination the witness said he did not know what was done in the case by plaintiff's attorney; that he had no personal knowledge of the assumed facts contained in the hypothetical question; that he based his testimony as to the value of the services of plaintiff's attorney upon his own experience in other cases and upon the general question propounded to him.

Plaintiff's attorney did not testify as to what services he rendered in the case, nor did any other witness testify concerning the attorney's services.

Harold S. Anchell, defendant's claim adjuster, testified that after obtaining permission therefor from plaintiff, he examined the hospital record. The testimony does not show what hospital record he examined. He stated that the record showed that insured was admitted to the hospital on September 12, 1931, at 8:16 P. M.

The witness further testified that the hospital record showed the following: Diagnosis, right incarcerated hernia; history showing that insured had cramping pains in stomach, in lower part on the right side; that he attempted to step over the lower strand of a barbed wire fence at five P. M., said date, when his foot caught and he fell forward, "on the lower part of his stomach; following which his hernia came down, causing him considerable pain and his coming to the hospital; that he reduced the hernia twice before coming to the hospital, but despite that the cramp-like pain persisted; that he noticed a firm

lump in the lower part of his stomach while going from work in a truck; that some pills obtained from the factory physician, as well as some liquid medicine obtained from a druggist, were unavailing; that he has had ordinary childhood diseases; has had no serious injuries or accidents; no history of edema, shortness of breath, cough, hemoptysis, palpitation, night sweats or dizziness. Patient states that for about one year he has had a right inguinal hernia, which has not given him any important trouble; at times it has descended partly in the scrotum, but he has always been able to reduce it. He has always done hard work and suffers from chronic constipation. This afternoon while working he fell, and immediately he noticed that the herniation had recurred and was irreducible. In this condition he entered the hospital. A cursory examination revealed an incarcerated right inguinal hernia. Patient well nourished. No evidence or diagnosis of dehydration or toxemia. Dr. Love reduced hernia and prescribed proper treatment.''

The witness further testified that after taking notes from the hospital record, as shown above, which he had just read to the jury, he called on plaintiff, told her he had inspected the hospital record and found that insured had suffered from hernia for about one year, which would cause the company to feel that it antedated the policy or application therefor, for which reason the company could not admit liability but that he would ask permission of the home office to make some small compromise settlement with plaintiff. The witness said plaintiff told him she knew, or at least she thought the insured could not have been ruptured during that period or she would have known it.

Edmond Gaebler, a former agent of defendant, testified that he took the application for the policy in question on August 27, 1930, and asked the questions appearing thereon, which were answered by the insured. He had no independent recollection of the matter with respect to the difference between the names of the insured and the beneficiary, designated as husband and wife, as such things were ''happening regularly,'' therefore, he did not question it in this case. He stated that he collected the first premium, turned it in, but did not deliver the policy as he left defendant's service that week.

The application was read in evidence. The beneficiary was designated therein as follows:

''Name of beneficiary, in event of death proceeds of policy, Bertha Streeter; relationship, wife, age 41.''

The application contained the statement that insured had never been rejected by this or any other company. The following also appeared therein:

''Give below history of illness and accidents during past five years, whether treated at home, doctor's office, hospital, dispensary or institution of any kind. No.''

"I hereby declare that the statements recorded above are true and complete and I agree that any misrepresentation willfully made shall render the policy void and that the policy shall not be binding upon the company unless upon its date I shall be alive and in sound health. Signature of applicant. A. B. CANNON."

Defendant contends that the court erred in refusing to give its Instructions A and D, and in giving plaintiff's instructions numbered 1, 3 and 6. The complaint by defendant by defendant under this point is that plaintiff's instructions should not have been given at all, but that defendant's Instructions A and D, in the nature of demurrers to the evidence, should have been given. In support of this view defendant urges that the hospital record was conclusive in showing that the insured's hernia had existed for about a year, and that he died as a result of an operation consequent upon its last protrusion.

We cannot agree with defendant's contention. Defendant produced no testimony showing that the insured had a hernia on the date that he made the application for the insurance, or that he had such an ailment on the date the policy was issued. The only evidence produced by defendant with respect to the condition of the insured's health on the date of his application and on the date of the issuance of the policy, was contained in the testimony of defendant's adjuster, Anchell, who read from notes which he had taken from the hospital record, showing a statement therein attributed to the insured, as follows:

"Patient states that for about one year he has had a right inguinal hernia, which has not given him any important trouble; at times it has descended partly in the scrotum, but he has always been able to reduce it."

Plaintiff had made a prima facie case by introducing the policy showing she was the beneficiary, and by showing the insured's death while the policy was in force. [Harris v. Insurance Co., 248 Mo. 304, 318, 154 S. W. 68; Novosel v. Midwest Life Ins. Co. (Mo. App.), 276 S. W. 87.] Defendant undoubtedly recognized this because it offered no demurrer to the evidence at the close of plaintiff's case.

After such a showing by plaintiff, the burden was upon defendant to prove its defense, that the insured was ruptured at the time the policy was issued, and that the matter misrepresented by the insured in his application contributed to cause his death. [Sec. 5732, R. S. Mo. 1929 (Mo. St. Ann., sec. 5732); Scott v. Natl. Life & Acc. Ins. Co. (Mo. App.), 281 S. W. 67; Harms v. Fid. & Cas. Co., 172 Mo. App. 241, 157 S. W. 1046.]

Plaintiff's evidence was to the effect that the insured had never been ill; that he always worked; that he was at work at the time he sustained the injury which required him to be taken to the hospital, where he died within two days thereafter. We cannot agree with

defendant's contention that the hospital record, which showed a diagnosis of hernia, from which insured had suffered "for about a year" prior to September 12, 1931, and the certificate of death of the State Board of Health showing the cause of insured's death was peritonitis due to operation for rupture or perforated ileum, constituted conclusive evidence requiring the court to take the case from the jury. Even if it be taken as true that the insured did state on September 12, 1931, when he entered the hospital, that he had suffered from a hernia "for about a year," that would be very far from conclusive evidence that on August 27, 1930, the date of the application, or that on September 8, 1930, the date of the issuance of the policy, the insured was suffering from hernia. In determining whether defendant's demurrer to the evidence should have been sustained, we must give plaintiff, not defendant, the benefit of all favorable evidence and inferences arising therefrom, and applying this rule we hold the court did not err in overruling defendant's demurrers to the evidence. It was clearly a case for the jury to decide.

Defendant next complains that the court erred in refusing its Instruction E, and in giving plaintiff's Instruction 3. By Instruction E, defendant sought to have the court tell the jury that there was no evidence of vexatious refusal by defendant to pay, and the jury therefore should not allow any penalty or attorney's fees.

Plaintiff's Instruction 3, which the court gave, submitted to the jury the question whether or not defendant vexatiously refused to pay the claim.

Defendant argues that the evidence indicated that insured's hernia antedated the application and policy, and that at most the defendant's liability was doubtful. No doubt the law is settled in this State that an insurer must be accorded the right to entertain an honest difference of opinion as to its liability, or the extent of its liability under the contract of insurance involved, as well as the right to have its difference with a claimant adjudicated by the courts without being subjected to penalties, provided it acts in good faith and upon reasonable grounds in contesting a claim. On the other hand, it is also well settled that if an insurer refuses to pay a claim without reasonable cause as the facts in evidence would appear to a reasonable man before trial, then the question of whether or not the insurer is liable for the penalties provided by the statute for vexatious refusal to pay, is a question for the jury to decide. [State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S. W. 43.]

Defendant's reason for not paying the full amount of the claim under the policy in the case at bar was that it believed insured was suffering with hernia at the time he made his application, and at the time the policy was issued. It produced no evidence directly supporting this belief but relied solely upon a statement attributed to the insured when he entered the hospital, to the effect that he had

been suffering from hernia "for about a year." The application for the policy was made on August 27, 1930, and the policy was issued September 8, 1930. The insured died September 14, 1931.

The uncontradicted evidence to the effect that defendant sought to settle plaintiff's claim, first, by offering her $40, then subsequently raising its offer to $50, and thereafter increasing the offer to $200, indicates that defendant entertained very serious doubts as to its right or ability to make any defense against the claim, and that it was willing to pay almost fifty per cent thereof in settlement even after it learned of the statement in the hospital record.

The policy was issued one year and four days before the insured made the statement attributed to him in the hospital record. The statement in that record that the insured had a hernia "for about a year" might just as properly be considered to refer to a period of time less than a year, as well as to a period of time more than a year. Defendant had no other evidence, so far as the record discloses, on which to base its charge that the insured was suffering from hernia at the time the policy was issued, except the statement in the hospital record. That statement is so vague and uncertain that defendant did not, after learning of its existence, regard it as a good defense against plaintiff's claim and wholly refuse to pay the claim, but sought to pay a part thereof, and by such part payment effect a full settlement of the claim.

Such conduct on the part of defendant, under the circumstances, together with the evidence showing that the insured was a strong man who always worked and that the injury which led to his death occurred while he was at work, only two days before he died, all of which was known to defendant before the trial, was sufficient, in our opinion, to warrant the court in submitting to the jury the question of defendant's vexatious refusal to pay.

Defendant next complains that plaintiff adduced no testimony with respect to the extent or value of the services performed by her attorney, and hence it was error to submit this issue to the jury. It is true, plaintiff's attorney did not take the witness stand and testify as to the services rendered by him to plaintiff, and no other witness testified on that matter.

The rule is well established that a hypothetical question must be based upon facts in evidence in the case, and if a hypothetical question be propounded to a witness, and such question contains assumed facts, of which there is no evidence, or fails to contain facts of which there is evidence, upon proper objection the question must be corrected or it will be held erroneous. However, it is the duty of a party to object to the form of a hypothetical question and point out wherein it is erroneous, if he desires to lay the foundation for complaint against such question thereafter on appeal.

In the case at bar, we find that defendant permitted the hypo-

thetical question to be asked without any objection whatsoever. While there may be some facts assumed in the hypothetical question concerning which there was no evidence presented, yet, we cannot say that there was no evidence upon which to base the hypothetical question. It is obvious from the record before us that plaintiff's attorney did conduct the trial of the cause. He was then and there before the court and jury rendering service to plaintiff in presenting her cause against defendant. That in itself was evidence of services rendered by the attorney, and if defendant was of the opinion that the hypothetical question contained assumed facts as to which there was no evidence, it was its duty to object on that ground and point it out. Having failed to do this, and having permitted the testimony to be introduced without any objection, defendant is not in a position to complain thereof in this court. [Skillman v. Ballew (Mo. App.), 27 S. W. (2d) 1036; Morton v. St. Louis-San Francisco Ry. Co. (Mo.), 20 S. W. (2d) 34.]

Defendant next contends that the court erred in giving plaintiff's Instruction 6, because that instruction erroneously required defendant to prove, among other things, that insured died of an ailment existing when the policy was issued, and thus put a greater burden upon defendant than that imposed by the statute.

The statute referred to is Section 5732, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 5732), which provides that no misrepresentation made in obtaining a policy of insurance shall be deemed material, or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury.

The instruction told the jury that the burden was on the defendant to prove that the insured was not in good health at the time the policy was issued, and unless defendant had proven that the insured was not in good health at that time, and that he died of an ailment from which he was suffering at that time, and which actually contributed to his death, then the jury should disregard such defense. We believe this instruction, instead of placing a greater burden on defendant than that imposed by the statute, was more favorable to the defendant than was necessary. It was broad enough to require the jury to regard defendant's defense if they believe the insured died of any ailment from which he was suffering at the time the policy was issued, which actually contributed to his death. Defendant was not, under this instruction, confined to proving that the insured was suffering from a hernia at the time the policy was issued, and that such hernia contributed to cause his death, as it might have been.

Defendant's next complaint is that plaintiff's Instruction 6 was in conflict with defendant's Instruction 2. The last mentioned in-

struction told the jury that if they believed from the evidence that the insured, in his application for the policy, willfully misrepresented that he had had no illness during the past five years, and if the jury believed that the insured was not then in good health, but was ruptured, and that such rupture actually contributed to his death, and that defendant's agent who took the application did not then know that the insured was in such bad health, then the verdict must be for defendant. We find no conflict in the two instructions which would warrant any interference on our part with the judgment.

The judgment is affirmed. *Becker, J.,* concurs; *Hostetter, P. J.,* not sitting.