CLARA LOUISE FOSTER v. AETNA LIFE INSURANCE COMPANY of Hartford, Connecticut, a Corporation, Appellant.—No. 38522.—176 S. W. (2d) 482.

Division One, November 1, 1943.

Rehearing Denied, December 6, 1943.

Motion to Transfer to Banc Overruled, January 3, 1944.

*Sullivan, Finley & Lucas* for appellant; *Oliver R. Beckwith* and *Berkeley Cox* of counsel.

*Alexander M. Goodman* and *A. B. Frey* for respondent; *Frey & Korngold* of counsel.

168

171

CLARK, J.—This case was heard and determined by the St. Louis Court of Appeals [169 S. W. (2d) 423] and transferred here because of the dissent of one of the judges of that court. We determine the case as though the appeal had properly come here in the first instance. [Mo. Const., Art. 6, amendment of 1884, sec. 6.]

The majority opinion in the court of appeals contains a statement of the pleadings and evidence which statement has been adopted by the appellant in its brief in this court, and a portion of which we quote, as follows:

"This suit was instituted in the Circuit Court of the City of St. Louis, on May 14, 1941, for the balance due plaintiff as beneficiary

in a policy of accident insurance issued by the defendant to her husband, Leslie W. Foster, on December 30, 1909. The policy provided for death benefit for accidental death in the sum of $3,000.00, to be increased at the rate of 10% of the original principal sum for five consecutive years, until the amount of the principal sum or death benefit was $4,500.00.

"The petition alleges that on December 15, 1938, that the plaintiff's husband slipped and fell, while walking up the steps to the front porch of his home and struck his right leg against the steps, severely injuring his right. knee, and, as a direct result of such injury, he was thereafter totally and permanently disabled until his death on January 25, 1939; that after proof of death, the defendant paid the plaintiff the sum of $3,000.00, leaving a balance due the plaintiff in the sum of $1,500.00 on the death benefit and $87.85 for. total disability of her husband from the time of his injury until his death, and $60.00 for surgical services to her husband, making a total of $1,647.85, for which she asked judgment, with interest and for damages and a reasonable attorney's fee for vexatious refusal to pay the loss.

"The answer admitted the issuance of the policy, the death of plaintiff's husband, the insured, on January 25, 1939, and the payment by the defendant to the plaintiff of $3,000.00 and denied all other allegations in the petition. For an affirmative defense, it was alleged that after the death of Leslie W. Foster, the plaintiff made claim for the principal sum of $4,500.00, and for $87.85 for total disability, and $30.00 for surgical services; that the plaintiff contended that Leslie W. Foster's disability and death resulted from a fall which injured his right knee; that upon investigation of the facts the defendant concluded that the death of Leslie W. Foster did not result directly and independently of all other causes from bodily injuries suffered by him, but resulted from disease, that is to say, nephritis and uremia; that thereupon the defendant, in good faith, denied liability, and a controversy arose in good faith as to the liability of the defendant, and that for the purpose of settling said controversy and avoiding litigation, the parties agreed upon a compromise and. settlement of plaintiff's claim, and the defendant agreed to pay and the plaintiff agreed to accept the sum of $3,000.00 in settlement of all claims which she had or might have under said policy; that on May 6, 1939, the defendant paid plaintiff by its check or draft the sum of $3,000.00, and the plaintiff executed and delivered to defendant her receipt and release for said sum in full payment of her claim under the policy.

"The reply. admits the payment of the sum of $3,000.00 and the execution of the release and receipt, and seeks to avoid said settlement and release by denial that a controversy arose in good faith as to the liability of the defendant, and that the parties agreed upon a compromise by the payment of $3,000.00 in full settlement of

plaintiff's claims, and specifically pleads that the purported satisfaction and compromise was invalid for want of consideration.

"The case was tried and resulted in a verdict and judgment for the plaintiff for the sum of $1,500.00, with interest thereon in the sum of $240.00, and for damages in the sum of $150.00 and attorneys' fees in the sum of $500.00, making an aggregate judgment of $2,390.00". Defendant appealed.

Appellant offered a demurrer to the evidence at the close of respondent's case and at the close of the whole case.

We deem it unnecessary to recite in detail the evidence given at the trial. Suffice it to say that respondent (plaintiff) offered substantial evidence authorizing the jury to find that insured died as the result of an accident, and appellant (defendant) offered substantial evidence which would have authorized the jury to find that the death was due to disease and not accident. There was a submissible issue on liability unless respondent's cause of action was foreclosed by the purported release set up in appellant's answer. The release acknowledged payment by appellant ▮▮▮ to respondent of $3,000.00 "in full payment, satisfaction and discharge—and final adjustment of all claims" under the policy sued on.

Aside from the small claims for disability benefits and medical fees, the liability of the appellant, if any, at the death of insured was the sum of $4,500.00. By the cases cited in their briefs the parties concede that release of a liquidated claim on payment of only a part thereof is not binding without an independent consideration, but that a dispute as to liability, made in good faith after reasonable investigation, will furnish a valid consideration.

▮▮ In this case respondent does not claim that the release was procured by fraud or duress. If the appellant, at the time the release was executed, had made a reasonable investigation and had ascertained facts or evidence which would cause a reasonable person in good faith to believe that insured came to his death as the result of disease and not by accident, or cause such a person to have an honest doubt that death was due to accident, the release is based on a valid consideration, otherwise it is not. [Zinke v. Maccabees, 275 Mo. 660, 205 S. W. 1; State ex rel. v. Trimble, 335 Mo. 213, 72 S. W. (2d) 111; Wood v. Tel. Co., 223 Mo. 537, 123 S. W. 6; Creason v. Harding, 344 Mo. 452, l. c. 469, 126 S. W. (2d) 1179.]

Appellant argues that, as the evidence made a case for the jury as to liability, there was a sufficient consideration for the release. But the question depends upon the facts or evidence within the possession of appellant at the time the release was executed, not at the time of trial, because there must have been a consideration *at the time* the contract of settlement was made. In Lynn v. Business Men's Assur. Co., 232 Mo. App. 842, 111 S. W. (2d) 231, l. c. 236, the Kansas City Court of Appeals in speaking of the consideration for an alleged compromise said: "The main question is whether or not

the evidence shows that the defendant *at the time of settlement* had information which caused it to believe there was no liability". [Italics supplied.]

In Brizendine v. Central Life Insurance Co., 234 Mo. App. 460, 131 S. W. (2d) 911, it is said:

"Furthermore, the question of whether or not there was a genuine good faith dispute as to liability must be determined in the light of the information in the possession of the defendant at the time of the settlement. Information discovered subsequent to a settlement certainly could not afford the basis of a controversy existing at the time of the settlement. Hence, facts developed at the trial of a case, unless shown to have been in the possession of the party relying on the release at the time the settlement was consummated, would not support the contention that a bona fide dispute existed at the time the settlement was made and the release executed".

This court, in Reilly v. Chouquette, 18 Mo. 220, l. c. 226, approved in Wood v. Tel. Co., 223 Mo. l. c. 565, held that, if there was sufficient basis for dispute at the time when made, a compromise would not be disturbed should it afterwards turn out that one of the parties had no right at law. In the instant case appellant's instruction number seven is drawn on the theory that the consideration for the release depends upon the situation at the date it was executed.

Appellant contends that the burden was on respondent to prove lack of consideration for the release. Respondent denies that this burden rested upon her. She further says that the question is not in the case, because no instruction was given or refused on burden of proof as to the release. However, the question is briefed by both parties and is pertinent to a consideration of respondent's instruction number four which we will discuss later. Release is an affirmative defense and the burden of proof is on the party who pleads it to prove that it was executed. But release is merely a contract of compromise and settlement and where, as respondent has done here, the execution of a release purporting to rest on a consideration is admitted in the reply the burden is on the plaintiff to plead and prove some invalidity in the release. [Macklin v. Fogel Const. Co., 326 Mo. 38, 31 S. W. (2d) 14; Wood v. Tel. Co., 223 Mo. 537, l. c. 565, 123 S. W. (2d) 6; Sheppard v. Protective Co., 233 Mo. App. 602, 124 S. W. (2d) 528; Williams v. American Life Co. (Mo. App.), 112 S. W. (2d) 909; 15 C. J. S. Compromise and Settlement, pp. 774, 5, 6, 7; Release, 23 R. C. L., pp. 4, 7, sec. 48.]

Respondent seems to concede that the burden is on one who attacks a release for fraud or duress, but says the same rule does not apply to an attack for want of consideration. We fail to see a reason for such distinction. Respondent, in support of this contention, cites: Schreiber v. Cent. Mut. Ins. Ass'n. (Mo. App.), 108 S. W. (2d) 1052; Nelson v. K. C. Pub. Serv. Co. (Mo. App.), 30 S. W. (2d) 1044, and Arnold v. Brotherhood of Locomotive Firemen

& Enginemen, 231 Mo. App. 508, 101 S. W. (2d) 729. The Schreiber opinion does not discuss the burden of proof, but it does inferentially lend some support to respondent's contention in the instant case by holding that the failure of plaintiff's instruction to mention a release pleaded by defendant was cured by an instruction for defendant which supplied the omission, the reason given being that release is an affirmative defense. The opinion overlooked the fact that plaintiff had admitted the execution of the release in his reply, and had pleaded matter in avoidance. The Nelson opinion is similar to that in the Schreiber case. In the Arnold case plaintiff had two policies of insurance, but sued on only one. Defendant pleaded a release and plaintiff's reply denied that the release was in settlement of the policy sued on. The court correctly held that defendant had the burden to prove that the release pertained to the cause of action on trial. Other cases cited by respondent are not in point on this question. It so happens in this case that respondent, to prove want of consideration, must prove a negative and a fact peculiarly within the knowledge of appellant, to wit, that appellant was without substantial evidence to justify a denial of liability in good faith. That does not relieve respondent of the burden of proof, but does shift the burden of evidence to appellant as to facts peculiarly within its knowledge. [Evidence, 31 C. J. S., p. 720, sec. 113.] Plaintiff offered substantial evidence that insured died as the result of an accident. That made a prima facie case both on the merits and on the lack of consideration for the release; for, if the jury believed plaintiff's testimony that the death was due to accident and appellant offered no evidence to the contrary, the jury would necessarily find that there was no good faith controversy as to liability which would furnish a consideration for the release. Thus, after respondent's prima facie case was made the burden of going forward with evidence shifted to appellant. In other words, it was then incumbent on appellant to disclose facts or evidence within its knowledge at the date of the release tending to justify its claim of nonliability, [Emory v. Emory (Mo.), 53 S. W. (2d) 908] but, upon all the evidence, the burden remained upon respondent to disprove consideration for the release, the execution of which she had admitted in her reply.

At the date of the release it is undeniable that appellant had before it certain documentary evidence. The interpretation of such evidence was for the court and, if it was such as might cause an honest doubt in the minds of reasonable men as to whether insured died from disease or accident, there was a basis for compromise and the court should have given a peremptory instruction for the defendant. This evidence consisted of the notice of injury; the statement of Dr. Gundlach, the attending physician; the hospital record; and the coroner's report with a statement and opinion of Dr. Gundlach attached to it. All this evidence was offered by respondent at the trial. The notice of injury stated that on December 14, 1938, insured fell on the steps

at his home and injured his right knee. The statement of Dr. Gundlach furnished to appellant on January 30, 1939, diagnosed insured's injury as a bruised right knee, with complications of periostitis, right knee, uremia and hypostatic pneumonia; stated that he saw insured daily from December 16, 1938, to his death on January 25, 1939, during all of which time he was totally disabled, and recited three operations performed on insured's leg. The hospital record gave the age of insured as 68, stated that he was admitted January 15, 1939; that his previous health was good as far as could be learned; recited the condition of insured from the time of his admission to the hospital until his death and stated uremia as a complication and final cause of death. The coroner's report gave in detail the findings of Dr. D. L. Harris, who conducted a post mortem examination, and gave as the cause of death: "ulcer of leg, chronic nephritis, chronic bronchiectasis". The statement of Dr. Gundlach, attached to the coroner's report, gave a detailed history of insured's injury and resulting condition and concluded with the opinion that "death was hastened by the infection from the periostitis which aggravated any kidney condition which he might have had, and caused uremia".

We have briefly stated all the information which is conceded to have been known to appellant at the date of the release. It points to the accident as the cause of death and does not justify a reasonable belief that death was due to disease. True, the post mortem findings of Dr. Harris, after giving ulcer of the leg as the first cause of death, also gave chronic nephritis and chronic bronchiectasis as causes, but a reasonable investigation would have shown appellant that these two additional ailments did not cause death, and so Dr. Harris testified at the trial. The hospital report gave uremia as the final cause of death, but the statement of Dr. Gundlach recited that the injury aggravated any kidney condition which he might have had and *caused uremia*. Even though the resistance of insured may have been weakened by a previous kidney condition, if so, and but for such weakened condition he might have survived the injury, yet, if the injury aggravated the previous condition and hastened death, appellant could not reasonably deny that the injury was the active and efficient cause of death. To hold otherwise would prevent recovery of accidental death insurance unless the plaintiff could prove that insured was in perfect health at the time of the injury. [See Wheeler v. Fidelity & Casualty Co., 298 Mo. 619, 251 S. W. 924, and cases cited.]

In addition to the above information, conceded to have been known by appellant at the date of the release, appellant claims to have had other information, to wit: a letter to appellant dated February 17, 1939, from Dr. Harris, inclosing a report on the autopsy performed by him on the body of insured on January 26, 1939, and a report by telephone from Dr. Harris to one of appellant's adjusters.

At the trial Dr. Harris said he was paid ten dollars by the coroner for performing the autopsy and appellant paid him one hundred dollars for making the report to it. He said he submitted to the coroner a copy of the report which he made to appellant, but could not explain why the coroner failed to preserve it in his files. In his report to the appellant Dr. Harris stated his anatomical findings as ulcer of the leg and other specified conditions. In his letter inclosing this report Dr. Harris stated: ''There is no evidence which would establish a connection between the ulcer and the death. If any such connection is claimed it could be established only by the clinical history of the case''. If we concede that appellant had this letter and report before it at the date of the release, we cannot say as a matter of law that they furnish a reasonable basis for a denial of liability. In the letter Dr. Harris does not express a positive opinion that there was no connection between the ulcer and the death. In fact, he indicates that there might be such a connection which could be disclosed by the clinical history. At best, this called for further investigation by appellant before it would be justified in claiming death was not due to accident. But, at that time, appellant had the clinical history of the case, which consisted of the hospital report and the statement of Dr. Gundlach, and the clinical history did purport to establish a connection between the ulcer and the death.

At the trial a Mr. Morrow, one of appellant's adjusters, testified that in the latter part of January Dr. Harris, in response to a request for his opinion as to the cause of insured's death, said he thought it due to a disease, some kidney disease. Dr. Harris testified that a few days before he made his report to appellant some one called him over the telephone and asked for his opinion as to the cause of death and ''I gave him my conclusions at that time, although they hadn't been reduced to writing''. If the trial court was compelled to accept as true the testimony of Morrow that appellant had a positive opinion from a reputable, skilled physician after he had performed an autopsy, that the death was caused by disease, then the court should have held that there was a valid consideration for the release and should have sustained appellant's demurrer to the evidence. [Brennecke v. Lumber Co., 329 Mo. 341, 44 S. W. (2d) 627.] But the trial court was not compelled, nor authorized, to accept this testimony as true, even though it was not directly contradicted. There were other circumstances in evidence tending to cast some doubt that appellant had received such a positive opinion at the date of the release. It should be noted that Dr. Harris did not testify that he gave a positive opinion to Morrow. He said he gave his conclusions which had not yet been reduced to writing. When these conclusions were reduced to writing he gave only a tentative opinion which might be changed on further investigation of the clinical history. If Dr. Harris gave Mr. Morrow the same conclusions over the telephone which he later reduced to writing, the testimony of Mr. Morrow is incorrect. If he

gave Mr. Morrow a positive opinion, he later qualified it in his written report which would seem to call for further investigation by appellant. Also, the circumstances under which the release was obtained might raise some doubt that appellant had, or believed it had, substantial evidence that the death was due to disease. The negotiations for the release extended over a period of several months and respondent's testimony indicates that appellant was rather persistent in trying to make the settlement. Respondent testified that appellant first offered her $1,000.00, then $2,000.00, then $3,000.00; that she refused the offers; that some days later appellant's adjuster called her and said he had the draft; that she went to his office and, upon learning that the draft was for only $3,000.00, refused to accept it; that still later the adjuster brought the draft to her home and induced her to accept it and sign the release. Payment of $3,000.00 on a disputed claim for $4,500.00 was at least some indication that appellant lacked faith in its claim of nonliability. [Streeter v. Ins. Co., 229 Mo. App. 33, 68 S. W. (2d) 889; Lynn v. Assurance Co., 232 Mo. App. 842, 111 S. W. (2d) 231.] Appellant's explanation is that it paid a substantial sum because of the friendship of its adjuster for the insured. Considering all the testimony on the question, the court could not say as a matter of law that there was such a good faith dispute of liability as to furnish a consideration of the compromise. The issue was one of fact for the jury. [Macklin v. Const. Co., 326 Mo. 38, 31 S. W. (2d) 14.]

It may be well to notice certain contentions of respondent, to wit, that there was no real dispute as to liability because the negotiations were conducted in an amicable manner and appellant did not disclose its reason for refusing to pay the full amount called for by the policy. These contentions are without merit. Of course, it was unnecessary for the parties to show anger or ill will in their discussions and appellant, absent a request, was under no duty to disclose its reasons for denying liability.

 Appellant complains of instruction number four given at request of respondent which we quote in full:

"The Court instructs the jury that the defendant relies, for one of its defenses herein, on an alleged settlement made with plaintiff on May 6, 1939, for the sum of three thousand, ($3,000.00) dollars, and release executed in connection therewith. The Court instructs you that in order for such settlement and release to constitute a bar to plaintiff's recovery for the balance alleged to be due, if you find plaintiff is otherwise entitled to recovery, there must have existed an actual bona fide dispute between plaintiff and defendant as to whether or not defendant was liable under its policy of insurance in evidence. Such dispute, if any, must have been based in good faith, upon substantial grounds, sufficient to warrant a reasonable person to believe that the defendant had a valid legal defense against plaintiff's claim. A mere assertion by defendant that it had such a defense, or that it

believed that it had such a defense, unless based in good faith upon substantial grounds, will not be sufficient to constitute a consideration for such settlement and release for the balance claimed to be due on said policy. If, therefore, you find and believe from the evidence that there was not an actual bona fide dispute between plaintiff and defendant as to the liability of defendant under its said policy, and that the claim made by the defendant that it had such defense was not made in good faith, upon substantial grounds, sufficient to warrant a reasonable person to believe that the defendant had a valid legal defense against plaintiff's claim, then you should find that the settlement and release given on connection therewith did not constitute a consideration for the release of the balance claimed by plaintiff under the terms of said policy''.

By the permission, twice given, for the jury to set aside the release if they found no dispute ''sufficient to warrant a reasonable person to believe that the defendant had a valid legal defense against plaintiff's claim'', this instruction gave the jury a roving commission to invalidate the release upon their own view as to the legal question of what would constitute a valid legal defense. Respondent argues that any vice in this instruction was cured by appellant's instruction number seven which submitted the facts essential to a valid consideration for the release. Respondent cites Schreiber v. Cent. Mut. Assn., 108 S. W. (2d) 1052, which we have already discussed. Other cases cited by respondent hold that error in a plaintiff's instruction directing a verdict, due to the omission of an essential element of the defense, may be cured by an instruction for defendant which correctly supplies the omission. That is not the question here. The vice of respondent's instruction is not that it omits an element of the defense, but that it erroneously submits an element necessary to respondent's burden of avoiding the release.

We are compelled to hold that the instruction constitutes reversible error. [Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S. W. (2d) 54; Gillioz v. State Highway Comm., 348 Mo. 211, 153 S. W. (2d) 18, 26; Macklin v. Fogel Const. Co., 326 Mo. 38, 31 S. W. (2d) 14; State ex rel. v. Shain, 344 Mo. 57, 124 S. W. (2d) 1194; State ex rel. v. Shain, 341 Mo. 733, 108 S. W. (2d) 351; State ex rel. v. Shain, 342 Mo. 1190, 119 S. W. (2d) 788.]

Accordingly, the judgment is reversed and the cause remanded. All concur.