**WESTERN LIFE INSURANCE COMPA-NY, Defendant-Appellant,**

v.

**T. H. WHITE, Plaintiff-Respondent.**

No. 7779.

Springfield Court of Appeals.

Missouri.

Dec. 15, 1959.

R. H. McRoberts, Jr., Bryan, Cave, Mc-Pheeters & McRoberts, St. Louis, for appellant.

Ward & Reeves, Caruthersville, for respondent.

McDOWELL, Judge.

In this action plaintiff, as beneficiary, sought to recover $547, balance due on a policy of life insurance issued by defendant on life of plaintiff's mother, Clara White. The cause was tried before the court (jury waived), and resulted in a verdict for plaintiff for $547 plus penalty of ten per cent of amount recovered with interest and $200 attorney fees. Defendant appealed.

The petition alleged that on February 17, 1956, defendant issued its policy of insurance whereby, in consideration of the payment of the premiums thereon, it agreed and undertook to pay plaintiff $1,000 upon the death of Clara White; that on December 10, 1957, while said insurance was in force and effect, the insured died, and, by reason of such death, defendant became indebted to plaintiff in the sum of $1,000. It alleged that all conditions of the policy had been conformed with, both before and after said loss and that demand had been made upon defendant to pay said sum and defendant had neglected to pay.

It alleged that defendant paid the sum of $453 under modified liability clause of the policy. and pleaded that the additional sum of $547 is due under the primary liability clause; that defendant's refusal to pay has been vexatious and without reasonable cause and, because of such facts, plaintiff is entitled to damages in the amount of ten per cent of said loss with reasonable attorney fees for the prosecution of the suit.

Defendant filed its amended answer and cross claim. The answer admitted the issuance of the policy sued on, the payment of premium and death of the insured; but denied defendant agreed to pay $1,000 to plaintiff upon death of insured except as conditioned in the policy. It denied vexatious delay, admitted the payment of $453 as alleged in the petition and pleaded that this sum was accepted in full satisfaction of the amount due on the policy and further pleaded that plaintiff is not entitled to any sum under the policy.

In the counterclaim defendant alleged that plaintiff is the son of Clara White; that on February 11, 1956, he made application for the policy sued upon; that in the application he made the following statements respecting the health and condition of insured:

"(a) That the mother, the insured, did not then have and never did have any infirmity of the body.

"(b) That his mother, the insured, had not been sick and had not received any medical treatment during the five (5) years prior to the date of the application, to-wit: February 11, 1956.

"(c) That the mother, the insured, had not been intimately associated with anyone having tuberculosis and that there had not been any tuberculosis in the family."

That these statements were false and known to be false at time of application, and were a fraud upon the defendant; that had the true conditions respecting insured's health been stated, defendant would not have issued the policy; that the premium paid for said policy was $86.52. It pleaded that because of the fraud the policy of insurance was void ab initio and prayed for recovery of the $453 paid less premium of $86.52.

Plaintiff's reply denied that he accepted the $453 in full satisfaction of the amount due on the policy and affirmatively alleged that the fraud and misrepresentation relied upon in the cross complaint constitute an attempt to contest the policy of insurance, which contract states on its face that it was issued in accordance with the provisions of the stipulated premium law, § 377.320 RSMo 1949, V.A.M.S., which section provides:

"In the event of death after any policy of insurance has been issued by any corporation, company or association, doing business under the provisions of sections 377.-200 to 377.460, and after the policy has been in force for the period of one full year, then such policy of insurance shall be incontestable for any cause."

That said policy of insurance was in force for a period of one full year prior to the death of the insured. It affirmatively denied that part of the answer which states "plaintiff accepted said sum in full satisfaction of the policy sued on". It pleaded that no bona fide dispute existed so as to constitute sufficient consideration for the payment of $453; that this payment was a partial payment of the liquidated amount due and defendant had no right to recover for partial payment of liquidated sum due under the policy. It stated that at time of the endorsement of the draft for $453, plaintiff was of the age of 20 years, and incompetent to enter into a contract of release.

The issuance of the policy sued on, death of insured, proof of death, payment of premium and the receipt by plaintiff of $453 payment are admitted.

Plaintiff offered in evidence the policy of insurance sued on, which contained an incontestability clause, to wit:

"This policy, and the application, a copy of which is attached hereto, shall constitute the entire contract between the parties thereto, and shall be incontestable as to each insured after it shall have been in force during the lifetime of each insured for one year from date, except for non-payment of premiums."

Plaintiff's oral testimony is that he was at the time of the making of the application for insurance, 18 years of age; that he did not tell defendant's agent his age; that he accepted from defendant's agent defendant's check for $453 and cashed the same the next day; that at the time of receiving the check he was informed by the agent that it was in full settlement of the policy. On the back of the check was the following clause: "By endorsement below the payee of this check does hereby acknowledge full settlement and satisfaction of claim to which reference is made on face hereof."

Plaintiff says that at the time he received the check the agent represented that the cause of insured's death was heart trouble.

The evidence shows that $200 is reasonable attorney fees for work performed for plaintiff.

Defendant offered to show that at the time of the application for insurance plaintiff made misrepresentations as to the physical condition and health of insured in said application. This offer was refused by the court because of the incontestable clause in the policy and the provisions of the statute. The application was offered in evidence and contained the following:

"I and the above named applicants have not now, nor have had, any infirmity in mind or body or any defect in hearing or vision or lost any part of the body, except: *None*

"I and the above named applicants have not been sick nor received medical treatment during the past five years, except: *None*.

"I and others of the above named applicants have not been intimately associated with any one having tuberculosis nor has there been any tuberculosis in the family history, except: *None*."

The application contained a declaration and agreement as follows: "I understand and agree that I have made each of the foregoing statements as a basis for the issuance of the policy for which this application is made, and that all statements in this application shall in the absence of fraud, be deemed to be representations and not warranties. * * *

"I understand and agree that in the absence of medical examination insurability is predicated on my statements that I am and all the above named applicants are free from all infirmities of mind and body at the date of this application and I further understand and agree that the insurance applied for will not be in force and effect until the delivery of the policy to me and while I and all of the above applicants are free from all injury or sickness. * * *" The application shows insured to be 54 years of age.

The insurance policy contained the following provisions:

"In the event tuberculosis, diabetes, cancer, myocarditis or other organic heart affection is the cause or the contributory cause of death of the insured within two years from the date this policy is issued, the Company will pay one-half the amount otherwise payable under this policy."

Proof of death, dated December 16, 1957, was duly submitted to the company [plaintiff's exhibit B]. It gave the immediate cause of death as "diffuse bronchiectasis", and, as a contributory cause "recurrent infection", and that insured had suffered from degenerative cardiovascular disease and cor pulmonale. It showed that insured had been treated by C. F. Cain, M. D. of Caruthersville, Missouri, and R. S. Smith, M. D. of Portageville, Missouri, during the last five years of her lifetime and showed that insured was 56 years of age at date of application for insurance.

Defendant's documentary evidence was the check for $453, the application for the policy, proof of death, and a copy of the death certificate. It is admitted by plaintiff that defendant delivered to him a check for $453, which it claimed to be in full settlement of plaintiff's claim under the policy.

In addition to the documentary evidence, it offered the depositions of Drs. C. F. Cain of Caruthersville and R. S. Smith of Portageville. This evidence shows that the insured was treated for chest troubles or bronchitis within the last five years of her life; that in 1955, at the suggestion of Dr. Cain, insured went to the sanatorium at Mt. Vernon. The trouble was not tuberculosis. The doctor testified that to his knowledge, while he was treating insured, she had no tuberculosis, diabetes, cancer, or any kind of heart disease. He defined bronchiectasis bronchial pneumonia, and pulmonary edema (referred to in the certificate of death) as contributing causes of death, as being conditions of lung trouble.

Dr. R. S. Smith, who was attending physician for insured at time she went to the University of Missouri Medical Center in 1957, stated that in September, 1957, she had bronchiectasis, from which she had been suffering for a year and a half; that the trouble was chronic infection in her chest; that this is a disease of the bronchial tubes and not tuberculosis. The doctor testified he made the proof of death. He defined the term "degenerative cardiovascular disease", used in the proof of death, as a change from a normal of the heart and its blood vessels, condition of hardening of the arteries of the heart and blood system, which condition was probably of only a few months. He defined "cor pulmonale" (used in the proof of death), as being a vascular disease involving a construction of the blood vessels and lung tissue, so that the circulation of the blood through the vessels is elevated above the normal. He said "hypertension of the lesser circulation" is similar to cor pulmonale. Witness testified that insured did not have tuberculosis, diabetes, cancer, myocarditis or any heart affection.

In our opinion we will refer to appellant as defendant and respondent as plaintiff, the position occupied by the parties in the lower court.

 Under point I, defendant contends that the insurance policy was void ab initio, and that the trial court erred in excluding evidence of bad health in finding against defendant on the counterclaim and in entering judgment for plaintiff on the petition.

Defendant relies upon the law as declared in § 377.340 RSMo 1949, V.A.M.S., to sustain his contention. This section reads: "No representation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and if so contributed in any case, shall be a question for the jury."

Lynch v. Prudential Insurance Co. of America, 150 Mo.App. 461, 131 S.W. 145, follows the law as declared by this statute. The facts in this case are that an old line life insurance company issued its policy of insurance on the life of one, Lynch, July 23, 1907. About six months thereafter insured died as a result of paresis. Payment was refused because the policy was obtained by misrepresentation or fraud and breach of warranty. There, as in the instant case, the application contained the representation that the insured was in good health when, in fact, he was suffering from a disease of the brain. The policy contained the same conditions as in the instant case, that the insurance should not become effective unless the insured was in sound health at the time the policy was issued. The only facts different from the instant case were that defendant tendered back all the premiums that had been paid on the policy. The court cited the statute and, 150 Mo.App. on page 468, 131 S.W. on page 147, stated:

"* * * The court declined to deal with this matter of a breach of warranty, and refused an instruction drafted on the theory that the insured had warranted his good health in the application. This was entirely proper; for it has been many times decided that the statute quoted abrogates the distinction which obtained at common law as between warranties and representations in life insurance contracts, and relegates matters which were theretofore regarded as warranties to the same plane as that occupied by representations."

The court, likewise, stated that under the Missouri statute untrue statements made will not defeat the policy, unless it relates to a matter contributing to the loss, whether made fraudulently or in good faith (citing much authority).

Baugh v. Life & Casualty Ins. Co. of Tenn., Mo.Sup., 307 S.W.2d 660, was a suit on a life policy in which the defense was false representations as to health of the insured. The questions involved related to the admissibility of hospital records. We think the facts are so different from those in the case at bar as to be of no assistance on the issues here involved.

Quirk v. Columbian Nat. Life Ins. Co., Mo.App., 207 S.W.2d 551, is relied upon by defendant. This was an action on an insurance policy. The answer admitted the execution of the policy, dated November 23, 1939, but denied delivery or that the policy was in force. In the application, which was incorporated in the policy, it was provided that the insurance should not take effect until delivery of the policy and payment of the first premium and while the proposed insured is in sound health. It stated that the policy was delivered to defendant's agent; that the premium was never paid and the policy never delivered while insured was in sound health and by reason thereof was not in force. The petition stated that insured's death took place December 23, 1939. On page 555 [1–2], the court stated:

"It is well settled that where parties agree in the application that the insurance

contract shall not take effect until the payment of the first premium and the delivery of the policy during the lifetime and sound health of the insured, such agreement will be enforced since it is one the parties have the undoubted right to make. Carpenter v. St. Joseph Life Ins. Co., 212 Mo.App. 336, 341, 246 S.W. 623. * * *"

We find that the law, cited by defendant, is properly declared under the facts in the cases cited, but, the trial court excluded the testimony as to the condition of the health of the insured because of the law as declared in § 377.320 RSMo 1949, V.A.M.S., which provides: "In the event of death after any policy of insurance has been issued by any corporation, company or association, doing business under the provisions of sections 377.200 to 377.460, and after the policy has been in force for the period of one full year, then such policy of insurance shall be incontestable for any cause."

The cases relied upon by defendant are cases in which the policy of insurance had not been in force for a period of one full year. Section 377.320 did not apply.

We think that the trial court's action in excluding evidence of bad health of insured is fully sustained by the provisions of § 377.320 RSMo 1949, V.A.M.S., above set out. It is, likewise, sustained by the opinion of the St. Louis Court of Appeals in Andrews v. Cosmopolitan Life, Health & Accident Ins. Co., 238 Mo.App. 1129, 194 S.W.2d 920. In this case the defendant insurance company was operating under the stipulated premium plan as provided by Article 4, Chapter 37, RSMo 1939 (now § 377.320 RSMo 1949, V.A.M.S.), and was held to be subject to such section. The court set out the section of the statute in its opinion. The facts were that plaintiff, respondent in the case, sued as beneficiary in a policy of insurance issued May 13, 1940, by appellant-defendant on an application dated the same day. The insured was the wife of plaintiff. Judgment was for plaintiff in the sum of $300. Defendant's answer admitted the issuance of the policy but alleged it was issued upon certain representations of the assured as to her condition of health; that she misrepresented material facts as to her health; that at the time of the issuance of the policy she was suffering from tuberculosis and diabetes, which diseases were a contributing cause of her death on August 17, 1942. It alleged by reason of § 5893, RSMo 1939 (being the same section of the statute relied upon by defendant in the instant case), said misrepresentations by assured at the time of the issuance of the policy made it void. Defendant tendered back the premiums paid on the policy. It sought to present its defense of misrepresentation by introducing hospital records showing the condition of the insured's health at various times. Objection was made that the policy was incontestable under § 5882, which objection was overruled by the trial court. Plaintiff, again, raised this question at the close of the whole case requesting a verdict for plaintiff on the ground the policy was incontestable. On appeal the court held that the objections to the defendant's evidence should have been sustained and a verdict directed for plaintiff at the close of the evidence. On page 992 of 194 S.W.2d, the court stated:

"The language of the statute, Section 5882, supra, is plain and unequivocal. It provides that when such a policy as the one involved herein has been in force 'for the period of one full year' then it shall be 'incontestable for any cause.' There are no exceptions in said statute and we are not authorized to read into it any exceptions."

In the instant case the evidence showed conclusively that the policy was in force for a period of one full year, and much more. It was incontestable for "any cause" and defendant's evidence as to misrepresentations was incompetent and immaterial and could have no effect whatever upon the validity of the policy and could not defeat defendant's liability thereon. Andrews v. Cosmopolitan Life, Health & Accident Insurance Co., supra, 194 S.W.2d at page 922 [1]. In this case the court quoted from the Supreme Court of Missouri analyzing

the reason and motive for incontestability clauses in insurance contracts, and stated:

" 'The motive for such contracts is to put the insured at rest as to all attacks upon the validity of his policy other than the exceptions named, provided he will pay the premiums * * * and to engender in his mind a conviction that those he has undertaken to protect will not be left unprotected. To effectuate these purposes the companies now propose contracts to the insured (like the one at bar), whereby they agree for a consideration, after a time fixed by themselves, to abandon any attack upon the obligations of their contract other than for specially reserved grounds. * * *' " (See authorities cited.)

We note that the trial court's rulings were not only supported by the statute but by the provisions of the policy itself, which contains the same incontestability clause. Harris v. Security Life Ins. Co. of America, 248 Mo. 304, 154 S.W. 68.

Under the evidence in this case, after defendant had been furnished with proof of loss and acquainted with all the facts relied upon under this allegation of error, it paid to the plaintiff the sum of $453, thereby acknowledging the validity of the policy and that the policy was in effect. We find against defendant under this allegation of error.

■ Under defendant's second alleged error he states that if the insurance policy in evidence was not void, defendant and plaintiff settled pursuant to the terms of the policy and plaintiff is bound by such settlement.

We gather from defendant's argument that the check for $453 paid plaintiff in settlement of defendant's liability under the policy represented a settlement pursuant to the modified liability provision in the policy. On page 4 of its brief, this statement is made: "Thereafter, the Company issued its check dated December 18, 1957, payable to respondent in the sum of $453 (Company's exhibit 1), representing a settlement pursuant to the modified liability provision hereinabove set forth (one-half the face amount) less an adjustment by reason of the misstatement of the age of the insured."

And, on page 17 of its brief, defendant states: "Under the cases cited, there appears to be no question but that the modified liability provision is valid. This being the case, respondent is bound by the settlement contract, even if the insured's death was not caused by any of the conditions set forth in the modified liability provision, so long as the evidence, at the time the settlement was made, would have led a reasonable person in good faith to believe that there was only limited liability. Foster v. Aetna Life Insurance Company, 1943, 352 Mo. 166, 176 S.W.2d 482."

The modified liability clause reads: "In the event tuberculosis, diabetes, cancer, myocarditis or other organic heart affection is the cause or the contributory cause of death of the insured within two years from the date this policy is issued, the Company will pay one-half of the amount otherwise payable under this policy."

■ Foster v. Aetna Life Ins. Co. of Hartford, Conn., 352 Mo. 166, 176 S.W.2d 482, relied upon by defendant to sustain his contention as to the settlement in full of plaintiff's claim, we think wholly fails to support such contention. This case was decided by the Supreme Court in 1943, after having been transferred from the St. Louis Court of Appeals. The cause was instituted in the Circuit Court of the City of St. Louis to recover balance due plaintiff as beneficiary in a policy of accident insurance issued by defendant. It was claimed that the death of the insured was caused from an injury sustained in a fall. Defendant claimed that the death resulted from disease and that it in good faith denied liability and that for the purpose of settling said controversy and avoiding litigation, the parties agreed upon a compromise and settlement of plaintiff's claim and defendant paid, and plaintiff accepted, $3,-

000 in full settlement for all claims under the policy. Plaintiff replied that the compromise was invalid for want of consideration. The court found that plaintiff offered substantial evidence authorizing the jury to find insured died as a result of accident and appellant, defendant, offered substantial evidence which would have authorized the jury to find that death was due to disease and not accident. There was a submissible issue on liability unless respondent's cause of action was foreclosed by the purported release. It acknowledged payment by appellant to respondent for $3,000 "in full payment, satisfaction and discharge—and final adjustment of all claims" under the policy sued on. The court stated on page 485:

" * * * By the cases cited in their briefs the parties concede that release of a liquidated claim on payment of only a part thereof is not binding without an independent consideration, but that a dispute as to liability, made in good faith after reasonable investigation, will furnish a valid consideration."

We take this to be the law. There was no evidence to show that any of the diseases named in the modified provision clause in the policy, caused or were the contributing cause of the death of insured. Defendant offered medical testimony that insured did not die of any of the diseases named in the modified liability clause of the policy, therefore, under the authorities cited by defendant, as set out above, the release of a liquidated claim of payment of only a part thereof was made without consideration in the instant case and was not binding upon plaintiff.

█ We think it is unnecessary under this alleged error to pass upon whether or not plaintiff was released from the alleged settlement because he was a minor. The authorities relied upon by defendant under this contention properly state the law that an infant is accorded the privilege of repudiating or disaffirming his contract when doing so, if he has in his possession, capable of restoration, the consideration received by him for obligations assumed, he must return such consideration and place the parties in status quo. He is obliged to restore to the other contracting party the fruits of the contract within his possession at the time. Phillips v. Savings Trust Co. of St. Louis, 231 Mo.App. 1178, 85 S.W.2d 923; Hamlin v. Hawkins, 332 Mo. 1098, 61 S.W. 2d 348, 350; 31 C.J. 1060, 1071; 43 C.J.S. Infants §§ 71, 75; Sassenrath v. Lewis Motor Company, Mo.App., 246 S.W.2d 520; Freiburghaus v. Herman Body Co., Mo. App., 102 S.W.2d 743.

It is contended by plaintiff that the settlement was not made after reasonable investigation. However, since we hold, under the facts in the instant case, that there was not a valid consideration for the settlement, it is unnecessary to determine whether or not there was a reasonable investigation made before the settlement. Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349; Watkins v. Prudential Ins. Co. of America, 239 Mo.App. 118, 151 S.W.2d 462.

In the Scott case, supra, 246 S.W.2d at page 353, the St. Louis Court of Appeals states: "The defendant has overlooked the fact that in addition to showing a genuine good faith dispute as to its liability, it must show that the amount paid to plaintiff as a consideration for the release was more than the amount of its admitted liability."

In Fowler v. Missouri Mutual Ass'n, Mo. App., 86 S.W.2d 946, 954, our court stated: "The amount named in the face of this policy, to wit $1000, became liquidated upon the death of assured, Biles. The defendant paid plaintiff $146.20, the purported consideration for the release. This it would be bound to do, under the law, before it could plead that the policy was void ab initio. It therefore parted with no more than it conceded that it owed to the plaintiff. Therefore, the release itself was not an accord and satisfaction of the balance of the liquidated amount due under the policy. The release in question was without consideration, and therefore cannot stand as a bar to plaintiff's cause of action."

Under the evidence the plaintiff admitted he did not tender back what had been paid prior to the initiation of this action.

In Roberts v. Woodman Acc. Co., 233 Mo.App. 1058, 129 S.W.2d 1053, 1055, the court stated:

"If, in fact, there was no ground for a bone [sic] fide dispute, then no tender back of the amount paid, under an alleged compromise, is required prior to bringing suit for the remainder claimed under the policy. In such case the payment of less than the whole amount due furnishes no consideration for the compromise contract and plaintiff was entitled to credit the amount so paid and sue for the balance." Mills v. American Mut. Ass'n, Mo.App., 151 S.W.2d 459; Robinson v. Benefit Ass'n of Railway Employees, Mo.App., 183 S.W.2d 407.

We find that the amount due plaintiff under said life policy was liquidated and under the evidence there was no bona fide controversy as to the amount due, therefore, there was no consideration under the authorities cited for such release.

■ It is contended that the court erred in awarding damages for vexatious refusal to pay.

In Jones v. Farm Bureau Mutual Insurance Company, Mo.App., 284 S.W.2d 11, 15 [6], cited by defendant, the court stated:

"* * * 'The word "vexatiously," as used in the statute, has been defined by the decisions of this court to mean without reasonable, or probable, cause or excuse'. Camdenton Consolidated School District No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 1092, 104 S.W.2d 319, 331.

"It has frequently been held in this state that the right of an insurance company to resist payment cannot be determined by the facts as found by the jury, but only by the facts as they reasonably appeared to the insurer before trial." See authorities cited.

In Bandy v. East & West Ins. Co., Mo. App., 163 S.W.2d 350, 354 [8–10], this court stated:

"* * * We think that there is no sufficient showing that defendant did not think it had a meritorious defense, when it refused to pay plaintiff in this case. State ex rel. Missouri State Life Ins. Co. v. Allen, 295 Mo. 307, 243 S.W. 839, loc. cit. 842. Such issue should not have been submitted to the jury, under the showing made in this case. The jury did not allow any sum as damages, but did allow plaintiff $125 as attorneys' fees. A plaintiff can only recover damages or attorneys' fees, or both, under the statute, where the insurance company has vexatiously refused to pay the loss."

In Butler v. Missouri Ins. Co., Mo.App., 187 S.W.2d 56, 61 [8], it is stated: "Paraphrasing from the opinion of the Supreme Court in the Foster case, 176 S.W.2d 482, loc. cit. 488: Also, the circumstances under which the release was obtained might raise some doubt that appellant had, or believed it had, substantial evidence that the disease that caused the insured's death had existed at the time the policy was issued. Payment of $300 on a liquidated claim of $500 was at least some indication that appellant lacked faith in its right to a claim of nonliability. Streeter v. Washington Fidelity Nat. Ins. Co., 229 Mo.App. 33, 68 S.W.2d 889; Lynn v. Business Men's Assur. Co. of America, 232 Mo.App. 842, 111 S.W.2d 231. * * *"

On page 62 of the same opinion [14–15] the court stated:

"The statutory penalties for vexatious refusal to pay are not assessible [sic] where a defense is made in good faith. However, in this case the question tried was whether a compromise agreement was entered into in good faith after a reasonable investigation. Under all of the circumstances this was a question for the determination of the trier of the facts, and his finding could only have been predicated on the theory that the compromise agreement was without consideration and not made in good faith. So find-

ing it would necessarily follow as night follows day that the defense as later made was not in good faith, such defense having been based solely and alone on a compromise agreement not made in good faith. Hence we would not be justified in interfering with the assessment of the penalties by the trial court."

In the instant case the defense of settlement was relied upon by the defendant. The defendant states that the settlement was made under the terms of the policy and the evidence establishes the fact that it was made after defendant had received proof of death and was acquainted with all of the facts. From the defendant's own testimony there was absolutely no basis in fact for such compromise settlement. The trial court found there was no consideration for such settlement. Likewise, the defendant contended at the trial that the policy was never in effect, void ab initio and, in its counterclaim, sought to recover the amount paid on the ground by misrepresentation of fraud. It never tendered back the premium on the policy and at the same time claimed the policy was never in force.

In Pauley v. Business Men's Assur. Co. of America, 217 Mo.App. 302, 261 S.W. 340, 343 [9], the Kansas City Court of Appeals stated: "Complaint is made of the allowance of the statutory penalties for vexatious refusal to pay the insurance. Defendant by holding on to the premium and at the same time claiming that the policy never was in force was guilty of a lack of good faith on its part in contesting this lawsuit. * * *" Lux v. Milwaukee Mechanics' Ins. Co., Mo.App., 30 S.W.2d 1090, 1093 [8–10].

Under the law we find that whether or not defendant's refusal to pay was made in good faith under all of the circumstances in the case was a question for the determination of the trier of the facts and that his finding could only have been predicated on the theory that the compromise agreement was without consideration and not made in good faith. So finding, it necessarily follows that the defense, as later made, was not in good faith based upon full settlement and fraud.

■ The last alleged error is as to the amount of judgment.

We find that this alleged error is not before this court, not having been raised in the motion for new trial but defendant attempted to raise the question by motion to modify, which motion was filed out of time.

Section 510.310 RSMo 1949, V.A.M.S., provides: "3. Upon motion of a party made not later than ten days after entry of judgment the court may amend the judgment and opinion. The motion may be made with a motion for a new trial."

At the time defendant filed its motion to modify the judgment more than ten days had elapsed from the time of entry of judgment.

Judgment affirmed.

STONE, P. J., and RUARK, J., concurs.